STAR LOAN ASSOCIATION, a corporation under the laws of Delaware, *vs.* WILLIAM A. MOORE.

*Loan Association ; Ascertainment of Value of Shares—Amount Due from Borrowing Members—Authority of Secretary to Receive Payment and Satisfy Mortgage— Presumption of Receipt—Evidence.*

1. Where a case was at issue on the pleas, in *sicre facias, held* that plaintiff had waived his right to move to strike out such pleas.

2. A paper purporting to be a certified copy or a private act of incorporation from the Secretary of State, it not being a certified copy of the recorded act or the record of such recorded act, is not admissible in evidence.

3. A book purporting to contain the by-laws of a loan association, which had been recognized and used by the defendant and other members thereof, *held* to be admissible in evidence.

4. It is competent for the stockholders of a loan association, for the purpose of winding up the business of the association, to make a final estimate of the value of the shares of stock, and to ascertain the amount to be paid by each borrowing member, in discharge of his indebtedness, after deducting therefrom the valuation of the shares of stock so estimated.

5. Where the stockholders of a loan association, for the purpose of winding up its business, make a final estimate of the value of the shares of stock, and ascertain the amount to be paid by each borrowing member, and such member pays the amount so ascertained, he is discharged from the indebtedness ; while, if such ascertainment is not final, but subject to modification by the subsequent disposition of the real estate belonging to, and the collection of the outstanding debts due the association, such payment by the borrowing member will not be a discharge.

6. The possession by a debtor of the evidence of a debt, such as a bond or mortgage, or a receipt in full payment thereof, is *prima facie* evidence of payment, if unexplained.

(*May 7, 1903.*)

LORE, C. J., and SPRUANCE and BOYCE, J. J., sitting.

*L. Irving Handy* for plaintiff.

*R. R. Kenney, Arley B. Magee* and *Henry Ridgely, Jr..* for defendant.

Superior Court, Kent County, April Term, 1903.

SCI. FA. SUR LE MORTGAGE.

The facts appear in the charge of the Court.

The pleas were payment, set-off, statute of limitations, and accord and satisfaction.

Before the jury was called, Mr. Handy for plaintiff moved to strike out all the above pleas except payment, on the ground that in an action by *scire facias* such pleas were bad; contending that a *scire facias* goes to the question of whether execution shall issue, and that while *null tiel* record, payment or release could be pleaded in said action; set-off, statute of limitations, or accord and satisfaction could not be pleaded.

*Burton vs. Willin, 6 Houst., 533 ; Foster on Scire Facias, *353.*

LORE, C. J.:—Have you taken issue on these pleas?

*Mr. Handy:*—Yes, sir; replications and issues.

LORE, C. J.:—Do you now wish leave to amend or to demur to these pleas, or what is your application?

*Mr. Handy:*—I do not think it necessary to demur, but my application is for leave to withdraw the replications and to move to strike those pleas out.

LORE, C. J.:—We cannot strike them out as they now stand, because you have taken issue on them. The case is at issue on those pleas; you have pleaded over and waived. If you had made this motion before you took issue the Court would entertain it, but we cannot do it now. We refuse to strike out the pleas.

*Mr. Handy:*—I offer in evidence the act of incorporation of

plaintiff association. There is no affidavit filed by the defendant denying the existence of the corporation.

BOYCE, J.:—It is admitted in evidence.

*Mr. Handy:*—I desire not only to prove the existence of the corporation, but the powers of same, and offer in evidence the original charter.

*Mr. Kenney:*—We object on the ground that the evidence that he should produce is the record evidence of such a paper. The law requires that it shall be recorded in one of the counties of this State.

BOYCE, J.:—Is it a certified copy of the private act of incorporation?

*Mr. Handy:*—Yes, sir.

BOYCE, J.:—Is there anything in the statute authorizing you to put that in evidence, when, to make it effective, it is required to be recorded?

*Mr. Handy:*—If I understand the law, the way to prove a private act passed by the Legislature is to produce before the Court from the office of the Secretary of State a certified copy of the act there on file. I have here the certificate of the Recorder of Deeds that this has been recorded.

BOYCE, J.:—This is neither a record nor a certified copy of a record. There is nothing which shows this paper to be a certified copy of the recorded act. All it purports to show is that this paper, which came from the Secretary of State, has been recorded. We do not think it is admissible in evidence.

(*Mr. Handy* served the following notice upon defendant's

counsel: "You are notified, as attorneys for William A. Moore, to produce at 10 A. M. on Wednesday, May 6, 1903, at the trial of the case of *Star Loan Association vs. William A. Moore,* the published copy of the by-laws of the Star Loan Association, which copy was given to William A. Moore, by said association, and used by said Moore as a member of said association and bound up by payments as such member made by said Moore.")

*Ridgely,* of counsel for defendant, asked for a ruling of the Court as to whether or not the above was a proper subject to be covered by the general rule of law as to notice to produce. The object of the notice to produce was to admit, upon failure of production of the original, secondary evidence. The notice served in the present case was to produce a copy, not an original. If a copy is produced, is that copy then to be admitted in evidence? If so, it is in direct violation of the fundamental rule of evidence, which is that only the original of a paper can be proved until you can account for the absence of the original. It is therefore manifest that a notice to produce can refer only to an original paper.

BOYCE, J. :—The book which in this discussion has been alluded to purports to contain the by-laws of the association, which were recognized and used by the defendant as a member thereof.

(Counsel for defendant thereupon produced a book, stating that it was produced simply as a book that was in the possession of defendant at the time the notice was served, but not as a book which was acted upon according to the notice served, which notice was curiously and, in their judgment, improperly worded.)

*Mr. Handy :*—I offer in evidence the printed portion of this book produced, which is the by-laws.

(Counsel for defendant objected to a portion of the book being offered in evidence, contending that, under the notice to produce,

the whole book must be put in evidence, including the receipts written therein by the secretary of the loan association.)

(*Harry Emmons*, a witness produced by plaintiff, was called to the stand and testified that the by-laws printed in a certain small book in the hands of the witness were the by-laws of the Star Loan Association, and were such during the membership of William A. Moore in said association. The witness was further questioned as follows):

BY JUDGE BOYCE:

Q. Have you any record of the adoption of the printed by-laws, contained in the book now produced, as the by-laws of the Star Loan Association?

A. There is no record, so far as I know. To the best of my knowledge these books constitute the by-laws, and there is no copy inserted in the minutes so far as I know.

BY JUDGE SPRUANCE:

Q. Are the by-laws as contained in that book the by-laws which have been promulgated by the association, and used and recognized generally by the members ever since Mr. Moore has been a member of the association?

A. So far as I know they have. My membership commenced in 1893, and these by-laws published in these books are the only by-laws I have ever had any knowledge of.

*By Mr. Ridgely:*

Q. Do you mean to say that that book contains a printed copy of the by-laws, or the by-laws adopted by the corporation?

A. I say that the by-laws of the corporation are in this book; and the only evidence we have of the by-laws of this association are these by-laws printed in these books, of which this is one.

Q. About how long has that association been in existence?

A.   I think it was organized somewhere in the sixties.

Q.   Have you seen the minutes of the association in the sixties ?

A.   No ; I have not seen them.

Q.   Can you say positively, then, that there were no other by-laws adopted except what were contained in these printed copies ?

A.   I say there are no other by-laws of the association except these by-laws published in these books, so far as I have any knowledge.   There is no set of by-laws copied into the minutes, so far as I have ever been able to examine the minutes, and I have examined them.

*Mr. Ridgely* further objected to the admission of the printed by-laws contained in the book, on the ground that the secretary was the proper person to prove the fact that the by-laws offered in evidence were the original by-laws written in the minutes of the association, notwithstanding the testimony of the witness who was president of the association, and that therefore it had not been proved that the proposed by-laws were the original by-laws of the association.

BOYCE, J. :—In the case of *Lockwood et al. vs. Mechanics National Bank, 9 R. I., 308*, it was held that a by-law informally adopted may be subsequently ratified, and without any record of adoption may be approved by the usage and acts of the bank and the persons dealing with it.

We also find in *2 A. & E. Ency. of Law (1 Ed. 709)* that by-laws may be adopted without the use of the corporate seal, and no entry in writing is necessary, as their existence may be established by custom or by acquiescence in a course of conduct by those authorized to enact them.   In support of the text is this note : " In the case of *Union Bank vs. Ridgely, 1 H. & G. (Md.), 324– 413)*, it was shown by oral testimony alone that for many years the rules and regulations headed ' By-laws ' and contained in one of the books of the bank, had been uniformly acted upon as the by-laws of the bank, although no entry in writing anywhere appeared

21

showing their adoption. It was, however, said by BUCHANNAN, C. J., 'No reason has been shown in agument, nor can we perceive any, where their adoption may not be proved as well by the acts and uniform course of proceedings of the corporation, as by an entry or memorandum in writing.' "

We admit the book in evidence as containing the printed by-laws of the association, and no objection is made to the admission likewise of the receipts for the payment of dues, etc., also contained in the book.

BOYCE, J., charging the jury:

Gentlemen of the jury:—This action was brought by the plaintiff, the Star Loan Association, a corporation of the State of Delaware, against the defendant, William A. Moore, upon a mortgage dated February 21, 1887, given by the defendant to the plaintiff, conditioned for the payment of the principal sum of one thousand dollars with lawful interest thereon from the tenth day of February, 1887.

At the time of the execution of said mortgage the defendant transferred to the plaintiff, as collateral security for the mortgage, five shares of the stock of the tenth series of said association held by him, and also a policy of fire insurance on the mortgaged premises.

The plaintiff claims that there is due on the said mortgage as the balance of the principal debt the sum of $180.75, with interest thereon from the first day of October, 1899; and it ascertains that balance as follows:

Amount of mortgage debt.  . . . . . . . . . . $1000.00
Interest on principal debt from July 1, 1898, to
    Oct. 1, 1899 . . . . . . . .  . . . . . .    75.00
                                              _____
Total amount due . . . . . . . . . . . .      $1075.00

Subject to the following credits:

Value of each of the said five shares of stock, to
    wit, $164.11, making . . . . . . . . . . . $820.55
And three cash payments made as follows: January
    6, 1899 . . . . . . . . . . . . . . . . .    20.00
February 4, 1899 . . . . . . . . . . . . . . .    20.00
March 25, 1899 . . . . . . . . . . . . . . . .    33.70

    Making a total credit of . . . . . . . . . .        $894.25

    Leaving a balance of . . . . . . . . . . . .        $180.75

The total amount now claimed to be due on said mortgage, debt and interest, is the sum of $219.62.

The defendant, on the other hand, claims that he has fully paid the principal debt and interest of said mortgage and that nothing is due from him thereon. That he made a final settlement of the mortgage on the twenty-fifth day of March, 1899, with John F. Miller, then Secretary of the association, at which time he alleges that he paid him the sum of thirty-three dollars and seventy cents, the balance then due on said mortgage. And that at the same time the said Miller surrendered to him the said mortgage and the accompanying bond with receipts in full payment thereof endorsed on each of them and also the policy of fire insurance. He alleges that he paid the said mortgage and accrued interest in the following manner:

By surrendering the said five shares of stock, each at the value
    of $185.84, as was ascertained and determined by the
    stockholders at an annual meeting held on July 7, 1898,
    aggregating in value the sum of . . . . . . . . . . . $929.20
And further by the three cash payments made subsequently to
    the said meeting, aggregating . . . . . . . . . . . .    73.70

It will thus be seen that the contention between the parties is as to the amount which should be credited to the defendant as the value of said five shares of stock.

It is conceded that Article 22 of the By-laws, which provides a method by which the value of the shares of stock of the association may be credited to a debt for which they may be held as collateral, has no application to this case under the evidence adduced. The plaintiff claims that the true value of the stock by which the defendant could make a full and final settlement of his mortgage and interest was not and could not be accurately and definitely ascertained until after the sale of the real estate held by the association, and that the value of said stock was not so ascertained until October 1, 1899, and that then when it was so ascertained it was found to be of the value of $164.11, and not of the value of $185.84, as claimed by the defendant.

The defendant justifies his claim of the credit of said stock at $185.84 per share, and the last three cash payments made by him, as in full payment of the mortgage, for the reason that the stockholders of said association at their said annual meeting, held on the said seventh day of July, 1898, for the purpose, as he alleges, of winding up the affairs of said association, ascertained the value of the shares of stock of the tenth series of said association to be the said sum of $185.84, and that for the purpose aforesaid they further ascertained the sums or balance due from the several borrowing members of said association; and in doing so they determined that there was then due on said mortgage of the said debt, after deducting the aforesaid valuation of his said shares of stock therefrom, the sum of seventy dollars and eighty cents. He further alleges that he was notified in writing of the action taken at said annual meeting, and that in pursuance thereof he made a final and full settlement of his mortgage debt and interest by the three cash payments already alluded to, the last having been made on the twenty-fifth day of March, A. D. 1899.

The plaintiff claims that whatever may have been the estimate of the value of said stock at the said stockholders' meeting, held on July 7, 1898, Miller, the secretary, had no authority to adopt such valuation as the amount to be credited on said mortgage and to ac-

cept the said sum of $70.80, then found to be the balance due on said mortgage, together with interest thereon, in full payment and discharge thereof, and that the action of the stockholders at said annual meeting in estimating the value of the stock and ascertaining the balance due from defendant on said mortgage was not a final determination of the amount actually due upon said mortgage, entitling him to make a final settlement upon that basis and in discharge of said mortgage—but was made for the purpose of suspending the payment of dues until the final disposition of the real estate held by the association, it being contended that the estimated value of the shares of stock thus ascertained, had in part at least been determined by the estimated value then placed upon the real estate of the association, and not by a final disposition thereof.

It was competent for the stockholders at the said annual meeting of July 7, 1898, for the purpose of winding up the business of the association, to make a final estimate of the value of the shares of stock of said association and to ascertain the amount to be paid by each borrowing member of the association in discharge of his indebtedness to the association, after deducting therefrom the valuation of the shares of stock so estimated by the stockholders. And if at said meeting a valuation of the shares was made and the balance due from the borrowing stockholders was ascertained and determined, and the defendant, in pursuance of such action of the stockholders, has paid to the association the amount so ascertained to be the balance of his indebtedness to the association, then and in that event such payment would be in full discharge of the mortgage, and he would be entitled to a verdict. If the ascertainment alleged then to have been made was not final so far as it related to the liability of borrowing members, but was, as to them, subject to modification by the subsequent disposition of the said real estate and the collection of the outstanding debts then due the association, then the settlement alleged to have been made by the defendant on the twenty-fifth of March, A. D. 1898, would not discharge the mortgage.

The possession by a debtor of the evidence of a debt (such as a bond or mortgage), or a receipt in full payment thereof, is *prima facie* evidence of payment, if unexplained; but there is no such presumption if the circumstances under which he got possession of the evidence of the indebtedness, or under which he procured a receipt in full payment thereof, are fully disclosed by the evidence.

It is conceded that the minutes of July 7, 1898, have been altered since they were first written. The alteration so made was done in such a manner as to leave no doubt, upon an inspection, what the entry was as first written, and likewise what change was intended to be effected in the minutes by the erasures and interlineations. It is for you to determine, under all the evidence, whether the entry as first made, or as changed by the erasures and interlineations, correctly recorded the action of the stockholders at said meeting.

Verdict for defendant.