HOME STATE BANK OF HUMESTON, Appellant, v. P. G. RATCLIFFE et al., Appellees; W. S. RICHARDS, Intervener.

JUNE 26, 1928.

202

*Steele & Miles,* for appellant.

*O. M. Slaymaker* and *Bracewell, Murrow & Poston,* for appellees.

KINDIG, J.—Appellee P. G. Ratcliffe made, executed, and delivered to the appellant, the Home State Bank of Humeston, two promissory notes. One was for the amount of $200, dated November 7, 1924, and the other $3,450, dated February 12, 1925. Both instruments were due and unpaid at the time this action was commenced by the Home State Bank, appellant, as plaintiff, against P. G. Ratcliffe and Ethel Ratcliffe, appellees, as defendants.

Apparently, the present indebtedness grew out of business transactions between P. G. Ratcliffe and the bank, which began as far back as 1918. During this period, appellee Ratcliffe obtained 10 shares of stock in the appellant bank, of the par value of $100 each, and received a certificate covering the $1,000 investment. Originally, relief was sought against the appellee Ethel Ratcliffe on the theory that she had received, without consideration, in defraud of appellant, certain properties belonging to her husband, P. G. Ratcliffe; but that issue is now no longer material, because the appellant expressly eliminates it, by concession of its failure to furnish the necessary proof in that regard.

Petition in this litigation was filed March 17, 1926. Thereafter, on June 30th, appellee P. G. Ratcliffe filed his voluntary petition in bankruptcy, and was adjudged a bankrupt on or about July 1st of that year. Intervener, the trustee in bankruptcy, reported to the referee in charge that appellee Ratcliffe's 10 shares of bank stock were so burdened with appellant's valid lien for appellee's indebtedness as to be worthless to the bankrupt estate, and thereupon the same was approved by the

bankruptcy court. Accordingly, the proceedings in the case at bar were continued in the district court of this state, for the purpose of foreclosing appellant's alleged "lien" on appellee's stock. The trustee in bankruptcy, as intervener, claimed these shares for the bankrupt estate; while appellee P. G. Ratcliffe asserted his rights thereto as paramount to either the creditors under the bankruptcy action or the appellant in this case. His theory, on the one hand, was that the trustee had abandoned the property, and on the other, that the appellant bank had no "lien" thereon. No appeal was taken by the intervener, and with him we are not now concerned.

There is but one question before us for decision, and that is whether or not the appellant bank has a valid and enforcible "lien" against appellee's stock for the financial obligation in question. If it has such, the foundation therefor is an alleged by-law, and nothing else.

I. At the trial there were offered in evidence Exhibits "C" and "D," purporting to be "By-laws of Home State Bank, Humeston, Iowa," containing five articles, of which the last is to the following effect:

"The ownership of stock shall be transferred on the books of the bank, and shall be so transferred upon the application of the owner upon presentation of the certificates; unless the owner of the certificate who is about to sell and have transferred is indebted to the bank, in which case the bank shall have a prior lien upon the stock."

Suitable objections by appellees were timely interposed against the admission of this document into the evidence. Immediately confronting us is the proposition that the alleged "by-law" was not properly identified, and proven to have been adopted by the directors or stockholders of the banking institution. That is the primary question here.

Such alleged "by-law" was contained in a book of the corporation, declared to be its minute record. However, the subject-matter which is said to have given rise to the "lien" appears out of order on pages 1 and 2 thereof, prior to the minutes and proceedings relating to the permanent organization of the corporation and its subsequent business transactions. Was the "by-law" ever

adopted? Proof of this fact may be made, under certain circumstances, by showing the bank's acts and uniform course of proceedings in recognition and under the authority of such "by-law," as well as the production of the concern's written minutes revealing the actual adoption thereof. *Star Loan Assn. v. Moore,* 4 Pennewill (Del.) 308 (55 Atl. 946); *Graebner v. Post,* 119 Wis. 392 (96 N. W. 783); 14 Corpus Juris 354, Sections 448 and 449.

II. Appellant is not claiming a "lien" because of any statutory provision. Neither does it contend that the bank's articles of incorporation authorize or create the same, nor was provision therefor or suggestion thereof made in the stock certificate. More than this, appellee P. G. Ratcliffe, according to the evidence, had no notice, knowledge, or information concerning the "by-law." What, then, if anything, gave it validity?

But one witness testified for appellant regarding this corporation rule. It was J. A. Courtright, who was not a stockholder, but an employee of the board of directors. This man's relationship in that regard commenced in May, 1919, as assistant cashier, and thus continued until 1925, when Courtright was promoted to the position of cashier, without, however, becoming a stockholder. While on the witness stand, this testifier said that he became associated with the bank after it had renewed its charter, in 1918. Then continuing, he further declared:

"I have in my possession and custody the by-laws [the one in question] adopted and in use in the Home State Bank."

Upon cross-examination, Courtright fully revealed the fact that his statement just quoted was a mere conclusion, for he did not pretend to say that such was true because of any personal knowledge on his part. He neither in specific terms nor by implication swore that the bank ever operated under or enforced the "by-law" concerning the "lien." And such regulations were at no time posted or published, so far as this witness knew. Thus the record stands, as set forth in appellant's original abstract.

Denial thereof, however, was made by appellees, and amendment filed thereto. In the "amendment" the original is denounced as incomplete, and requiring correction by the addition of the following:

"The so-called by-laws of the Home State Bank of Humeston, Iowa, which are found in the records as Exhibits 'C' and 'D' on page 13 of the abstract [the by-laws under discussion] are not shown to have been adopted by the directors or stockholders of such bank. * * * They are not signed by anyone, nor is there any record in connection therewith to show that they were adopted or were ever in force or effect. They appear in the book on pages 1 & 2, prior to the permanent organization of such institution."

Without denial or certification of the record, appellant permitted this amendment to stand. Therefore, the same must be effective as the truth, and so considered by us. *Pullan v. Struthers*, 201 Iowa 709. Manifestly, appellant has not proven, by the minutes of the bank or by its custom or usage, that the "by-law" produced was ever adopted or in effect.

III. Lacking this necessary evidence, appellant must fail, because its case is predicated upon the "by-law," and the burden was upon it to prove the adoption, either by the minutes or usage. *Wright v. Farmers Mut. Live-Stock Ins. Assn.*, 96 Iowa 360; 22 Corpus Juris 900, Section 1096. See *Ney v. Eastern Iowa Tel. Co.*, 162 Iowa 525.

Having failed in that regard, such omission cannot be overcome, as attempted by appellant, through producing an alleged "by-law" in an isolated position of the record book; for, rather than being connected with or a part of the proceedings of the organization and its business transactions, this particular foreign item was alone and by itself, disconnected, and entirely separated, to the extent that it was not, in fact, a part of the "minute book." Wherefore, in this seclusion it was not identified as a part of the corporation laws, and without the necessary proof of its adoption could not be admitted in evidence.

As to who placed it there, when so done, and by what authority, the record is absolutely silent. For an answer we are required to guess. Even a prima-facie identification cannot be predicated upon this situation. Since appellant has failed to establish the "lien," it is not entitled to any recovery whatsoever, because the bankruptcy proceedings barred all relief on the original indebtedness against the appellee P. G. Ratcliffe personally.

206

Many other propositions are extensively argued by the parties, but the foregoing discussion on our part makes entirely unnecessary any further review thereof.

The judgment and decree of the district court should be, and hereby is, affirmed.—*Affirmed.*

STEVENS, C. J., and EVANS, FAVILLE, and WAGNER, JJ., concur.