# Alabama National Bank v. O'Neil.

*Bill in Equity for Settlement of Trust.*

1. *Corporations; what necessary to make acts of agents binding.*
   The officers of a corporation, without being expressly authorized thereto by the board of directors, have no power to enter into contracts binding upon a corporation to borrow money, or to make assignments of collateral security; and in order for such unauthorized acts on the part of the officers of a corporation to be binding upon it, they must be ratified by the board of directors; and the burden of proving a subsequent ratification is upon the party claiming under the unauthorized contract.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The facts of the case are sufficiently stated in the opinion.

JOHN W. TOMLINSON and BENNERS & BENNERS, for appellant.—"The result of the cases would seem to be that where the management of the affairs of a corporation is entrusted to a general managing agent he has the power to assign the choses in action of the corporation to its creditors either in payment of or as security for the payment of a precedent debt of the corporation without express authority from the board of directors, and the assignment so made is valid."—*Mc-Kiernan v. Lenzen,* 56 Cal. 61.

Where an unauthorized assignment of collateral security is made by an officer of a corporation to secure borrowed money at the time the money is borrowed, the corporation cannot recover such collateral without returning the borrowed money.—2 Cook on Corporations (3d ed.), 1514, note 2; *Pittsburg & C. Ry. Co. v. Keokuk & C. Bridge Co.*, 131 U. S. 371; 33 Lawyer's Edition, 157.

"Where the president as the financial manager pledges the company's bonds and *for more than a year* such pledge continues *without objection* the pledge is ratified."—*Ill. Trust & S. Bank v. Pa. Ry.*, 49 Pac. Rep. 197; *Edelhoff v. Horner, etc.*, 39 Atl. Rep. 314.

A corporation which sufferes an agent to hold himself out as authorized to bind such corporation in a particular line of transactions is bound by the acts of such agent.—*Talladega Ins. Co. v. Peacock*, 67 Ala. 252.

JAMES E. WEBB, *contra.*—Neither Hooper as secretary and treasurer nor Richard Thomas as president, nor both together, without authority from the other directors, had any right to execute in the name of the company a negotiable note such as that held by the Alabama National Bank. Neither J. D. B. Hooper as secretary and treasurer, even if he acted with the knowledge and consent of Richard Thomas as president, nor both of them together, had any right to execute to the Alabama National Bank a transfer of a claim due to the Little Warrior Coal Company against the Central Railroad of Georgia, as collateral security.—Beach on Corporations, §§ 187, 209, 276; Cook on Stocks & Stockholders, §§ 712, 716, 719; *New York Iron Mines v. First Nat. Bank*, 39 Mich. 644; *Jackson v. Campbell*, 5 Wend. 572; *Life Ins. Co. v. Mechanics F. Ins. Co.*, 7 Wend. 31; *Norton v. Ala. Nat. Bank*, 102 Ala. 420; 48 N. J. L. 513.

HARALSON, J.—The Little Warrior Coal Company, a body corporate, executed to the complainant, Charles A. O'Neil, in February, 1895, a deed of assignment to

its properties, including its choses in action, for the benefit of its creditors. O'Neil filed this bill against the Coal Company and the Alabama National Bank and others, creditors of said Coal Company, for instructions of the court in the settlement of his trust. The only part of the bill relating to the question involved on this appeal, refers to a claim of the Alabama National Bank against said Coal Company. J. D. Hooper was the secretary and treasurer of said company, and on the 25th of March, 1892, he borrowed from said bank for said company, the sum of $1,000, for which he gave the note of the company by him as secretary and treasurer, which was renewed from time to time, the last time, on February 10th, 1894, for $1,125. To secure the payment of this note, said Hooper, as secretary and treasurer of said company, on May 18th, 1893, transferred to said bank a claim of said Coal Company on the Central Railroad and Banking Company of Georgia for $1,170. This claim was collected by an attorney in Georgia, and the parties jointly petitioned the chancery court to allow the fund, less attorney's fees, to be paid to the register and held by him, to await the decree of the court, adjudging to which of the parties said fund belonged,— the bank claiming that it belonged to it, under its alleged transfer from said Coal Company, and the company contending that the claim of the bank is invalid. The court rendered a decree according to the request of the petitioners, and ordered the register, when the fund came into his hands, to hold a reference and ascertain and report what, if any claim the bank had against said Coal Company; what, if any, transfer the bank had to the claim of said Coal Company against the Central Railroad and Banking Company of Georgia, and to the fund realized from said claim; whether the same belonged to the bank or to the Coal Company or its assignee, etc. The register executed his reference, and reported to the court, that the said bank had a just claim against said Coal Company, if not upon the said promissory note of $1,125, with interest, then for money had and received by the Coal

Company from said bank and used by the said company, in the sum of $985, with interest from March 25th, 1892; that the bank had no legal and valid transfer of said claim, nor any other claim to the funds realized therefrom, greater than other creditors of said company had thereto; that the treasurer of the company undertook to transfer to the bank the company's claim against the said Railroad Company, when he had in fact and in law no such authority; that the burden of proving a legal and valid transfer of this claim or the subsequent ratification of the board of directors or the stockholders of the Coal Company of any invalid transfer, rested upon the bank, the party asserting said transfer; and the weight of the testimony did not sustain this burden, nor support the contention of the bank, that said transfer was subsequently ratified.

The bank filed several written exceptions to the confirmation of the report of the register. These exceptions were held by the court not to be well taken and were overruled, and the report was in all things ratified and confirmed, etc.; and from that decree this appeal is prosecuted.

1. Mr. Cook lays down the doctrine, that "All contracts of a corporation are to be made by or under the direction of its board of directors. The board of directors make corporate contracts by a regular vote of the board; or by authorizing an agent to make them; or by allowing an agent to assume and exercise that power; or by accepting a contract, or its benefits after it has been made by an authorized agent. But in all cases, the board of directors, and not stockholders, nor the president, secretary, treasurer or other agent, is the original and supreme power in corporations to make corporate contracts. * * * Moreover, the directors can contract and act only as a board, duly notified and assembled. The members of the board cannot agree separately and outside of the meeting, and thereby bind the corporation. Nor can a minority of the board meet and bind the board. A majority must be present, and then a majority of that majority binds the corporation. A single director has no power to

contract for the corporation."—2 Cook on S. & S. & Corp. Law, § 712. The president has no power to buy, sell or contract for the corporation, nor control its property, funds or management; nor has the secretary and treasurer, though the corporation may expressly authorize these or any other agent to contract for it, and may accept and ratify the contracts of either after they are made.—*Ib.* §§ 716, 717. Even the general manager of a corporation has no power, says the same author, to make and deliver the promissory note of the company, nor indorse the company's name on commercial paper.—§ 719.

Again it is said, an agent to manage a business, cannot mortgage the property used in carrying it on, nor bind his principal by the execution or indorsment of negotiable paper.—1 Am. & Eng. Ency. Law (2d ed.), 1024, 1025; *Spyker v. Spencer,* 8 Ala. 233; *Gibson v. Goldthwaite,* 7 Ala. 281.

While these are the general rules on the subject, they have, in obedience to the demands of commercial necessity, been relaxed, so that, as we have heretofore held, "In the ordinary dealings of construction and trading corporations, it is often impracticable for a company to speak and act through its governing body, and when acting through agents within the scope and purview of their chartered powers, the same intendments and implications arise, as spring out of similar actions of conduct of natural persons; and acts of a person assuming to represent such corporation, and transactions with him in the line of the business of the corporation, even though without express authority, become binding on the corporation, if subsequently ratfied by it, and such ratification may be made expressly or by mere acquiescence, or by failure to repudiate the act, knowing it to have been done."—*Bibb v. Hall,* 101 Ala. 79.

2. Applying these principles to the case in hand, the register found the secretary of the Coal Company was without authority to transfer the account of the company against the Central Railroad and Banking Company of Georgia to the Alabama National Bank, as collateral security for the debt the company owed

the bank for borrowed money; and the chancellor approved and ratified this finding.

The evidence of the bank tends to show that the secretary, Hooper, had the authority claimed for him. He swore that the Coal Company did not borrow much money; that he collected money due the company, sold most or nearly all of its coal, bought goods, paid the bills, and transacted all the general business of the company; that he failed to collect the account against the railroad, because it had gone into the hands of a receiver, and the company needed the money; that he conferred with Richard Thomas, the president of the company, who suggested the borrowing of the money, and even went with witness to the bank when he borrowed the money, though Mr. Thomas did not go in, but waited outside the bank. He further testified, that the directors were fully cognizant of the facts and made no objections. He stated, however, that the directors had no formal meeting.

On the other hand, Mr. Thomas testified, that he was president of the coal company at the time said note purports to have been given,—on the 25th March, 1892; that he had no conversation whatever with Mr. Hooper about borrowing the money, or pledging the security of the company for the same; that on the 2d of March, 1892, he went to Pioneer, Tennessee, where he remained until the 2d of May following, at which time he returned to Birmingham; that he had never heard or been informed, that Hooper had made a transfer of the claim against the railroad to the bank, until about twelve months ago (about December, 1898), and he did not know, up to March, 1894, nor was he informed that Mr. Hooper had borrowed money from the bank and given the notes of the company for it. He also testified there was no resolution or by-law adopted by the board of directors of the company authorizing Mr. Hooper to sign or pledge claims of the company against the railroad to the bank, nor was there any ratification by the board of directors of the company by resolution or otherwise of that transaction.

This was not all the evidence before the register, but the substance of so much of it as we deem it importnat to

[Richter v. Noll *et al.*]

refer to. From what has been given, it is sufficient to say, that we find no occasion to disapprove the findings of the register and chancellor, but are constrained to approve them and affirm the decree appealed from.

Affirmed.

