JOHN J. NEY, Appellee, v. THE EASTERN IOWA TELEPHONE COMPANY, Appellant.

**Practice:** DIRECTION OF VERDICT. Before the court is warranted in
1   directing a verdict every fact favorable to the party against whom the verdict is asked, and which the evidence tends to prove, must be conceded or established.

**Corporations:** POWER OF OFFICERS. The president of a corporation
2   has no power simply by virtue of his office to bind the corporation or control its property. His power in this regard must come from the articles of incorporation by a delegation of authority from it directly, or through its board of directors formally delegated, or it may be implied from a habit or custom of doing business.

**Same:** POWERS OF DIRECTORS: DELEGATION OF POWER. The members
3   of a board of directors of a corporation cannot agree separately and outside of a meeting of a majority and thereby bind the corporation. Nor can a minority of the board meet and bind the corporation by their actions: there must be a majority present, and a majority of the majority must act. A majority of the board of directors, however, in a meeting may delegate to an agent the power to contract for the corporation.

**Same:** MANAGEMENT OF CORPORATION: POWER OF PRESIDENT. Under the articles of incorporation providing that the affairs of the corporation shall be managed by a board of directors, who shall elect a president, and there was no by-law authority, the president by virtue of his office alone had no power to bind the corporation by contracting for the employment of an attorney to prosecute suits for it.

**Same:** MINUTES OF CORPORATION: EVIDENCE. The record of a special meeting of the directors of a corporation, which was not kept in the regular minute book and not a copy of the minutes made by the secretary, but was written up by one of the directors, is not competent evidence of the matters therein recited. Evidence held insufficient to show that the president had authority to contract for legal services.

**Same:** AUTHORITY OF OFFICERS TO CONTRACT: AGENCY: EVIDENCE. The rule that where a principal allows another to act in the capacity of agent with apparent authority, and where he receives and retains the benefits of the agent's acts he will be estopped to deny his authority, applies where the ordinary business of a corporation has been conducted by one of its officers, and the corporation has received the benefits of the contracts made by such officer. In such cases the natural inference is that as such officer has been endowed with power to direct and manage the affairs of the corporation therefore his acts are binding upon it. In the instant case, however, no facts are disclosed showing such a course of business conducted by the president of the corporation, and there was affirmative evidence that he had no power to engage the legal services of plaintiff, and his act in so doing was not binding upon the corporation.

**Same:** ESTOPPEL: EVIDENCE. Where the president of a corporation employed plaintiff to bring suit against its principal stockholder, who was also a director, to compel an accounting; and thereafter a dispute arose as to who were elected officers of the corporation, and plaintiff represented the president and his faction in a suit against such principal stockholder and his faction to determine that question, a stipulation entered into between the members of the factions respecting the prosecution of the action against the principal stockholder, did not by mere acquiescence of the corporation estop it from denying the power of the president to employ plaintiff in the first instance: as none of the parties to the stipulation were representing the corporation. And as there was a dispute as to who were present and participated in the stipulation concerning plaintiff's employment that question was for the jury.

**Same:** EVIDENCE: VALUE OF SERVICES: HYPOTHETICAL QUESTIONS. No
8    matters should be included in a hypothetical question not covered
by the evidence; especially where the witness is called upon to fix
the value of services rendered upon an assumed state of facts. Thus
where it appeared that plaintiff, in a suit against a corporation
for legal services, performed at the instance of the president of a
corporation, had performed services for one of two warring factions
to determine who were the legally elected officers of the corporation,
the allowance of a hypothetical question relating to the value of
plaintiff's service which introduced matters not in the record and
relating to the other suit was erroneous.

*Appeal from Johnson District Court.*—HON. R. P. HOWELL,
Judge.

SATURDAY, DECEMBER 13, 1913.

ACTION to recover attorney's fees for services rendered
defendant as a corporation, at the question and instance of its
president, without any showing on the part of the plaintiff
of authority from the corporation to employ him, or any
fact from which such authority might be inferred.—*Reversed.*

*F. B. Kimball* and *Remley & Calkins,* for appellant.

*Ney & Bradley* and *C. S. Ranck,* for appellee.

GAYNOR, J.—The plaintiff is an attorney at law. De-
fendant is a corporation organized under the laws of this
state, and this action is brought to recover the reasonable
value of services claimed to have been rendered by the plain-
tiff, to the defendant, under an oral contract of employment
made by the plaintiff with the president of the defendant
company. The action is in two counts. In the first count
the plaintiff claims that he was orally employed by one J. H.
Rohret, president of the defendant company, to take charge
of a certain case and defend the corporation company in a
suit brought by one O. W. Eddy against the company, in

which plaintiff claims he rendered certain services, for the defendant company, to the actual value of $30. In the second count, the plaintiff claims that he was orally retained and employed by one J. H. Rohret, president of the defendant company, to bring a suit for and in behalf of the company, against one Fred Crow; that he appeared and conducted said suit to a final issue in the district court, for which he claims the sum of $1,000. The defendant company, answering plaintiff's petition, enters a general denial, and specially denies that it employed the plaintiff to perform any services for it; denies that it employed the plaintiff, through its president or any one else; that whatever employment the plaintiff had, in respect to the matters, was made by Rohret individually, and not for and in behalf of the company; that the said Rohret was never authorized or empowered to employ plaintiff, or to bind defendant corporation and its stockholders by any such contract as plaintiff avers. Defendant further alleges that, at the instance and by the procurement of Rohret individually, the plaintiff, not as attorney for the defendant, but to further the wishes and desires of a certain faction of the stockholders, who were in the minority both in numbers and shares of capital stock owned, brought said suits, improperly and unauthorizedly, in the name of said company, against one of its principal stockholders, to wit, Fred H. Crow, and therein asked recovery against him in the amount of $50,000, which claim was in excess and out of keeping with moneys held or dealt with by the said Crow, and that said litigation was not brought or maintained in good faith, nor by the wish of the majority of the stockholders, nor for their best interest, nor by proper direction; that said suits were not brought in the interest of the company, nor for its benefit, and Rohret in instituting said suit had no reasonable grounds for believing that said Crow was indebted to the company, or held any money or property belonging to the company; that said suit was brought for the sole purpose of embarrassing the said Crow financially, and

that the said Rohret alone is liable for any services rendered by this plaintiff. The plaintiff, for reply to defendant's answer, says that the said J. H. Rohret had express and implied authority to employ the plaintiff as alleged in his petition, and that the plaintiff so believed at the time he entered into the employment, and rendered the services; that while engaged in the performance of his duties, as attorney aforesaid, the manager, R. K. Luse, all the officers of said corporation, all its directors and stockholders, then being engaged in the trial of the case of the State of Iowa, ex rel. Newkirk et al. v. Rohret et al., entered into a settlement of said case, one provision of which was that the plaintiff should be continued, and that the prosecution of the case of the defendant against Fred H. Crow, then pending, in which the plaintiff was sole attorney, should be continued and carried on, without hindrance, to a determination thereof; that the plaintiff thereafter prosecuted said case to a determination in the district court, and appealed from the decision in said court, and the defendant herein dismissed said appeal, against the will of this plaintiff, and thereby prevented plaintiff from further prosecuting said case as attorney; that by said act and stipulation, and subsequent dismissal, the defendant is estopped from denying the employment of plaintiff for his services so rendered, and the plaintiff denies all other matters set out by defendant in its answer. Upon the issues thus tendered, the court instructed the jury that the only question for their consideration was the amount which plaintiff was entitled to recover for services rendered in the case entitled Eastern Iowa Telephone Company v. Fred H. Crow, and withdrew from the consideration of the jury all questions of his employment by the defendant, and all other issues tendered in the pleading, and thereupon the jury returned a verdict for the plaintiff, and, judgment being entered on this verdict, defendant appeals.

In view of the fact that the court practically instructed the jury in favor of the plaintiff, upon the issue tendered as

to his employment by the defendant, and left to the consideration of the jury only the question of the amount of compensation plaintiff was entitled to for the services rendered, we must not overlook the rule, which has been established by a long line of decisions in this court, that, before the court is warranted in directing a verdict upon any issue tendered, every fact favorable to the party against whom the verdict is asked, and which the evidence tended to prove, must be conceded as established. See *Degelau v. Wight*, 114 Iowa, 52; *Hartman v. C. G. W. Ry Co.*, 132 Iowa, 582; *Scott v. St. Louis, K. & M. Ry. Co.*, 112 Iowa, 54.

1. PRACTICE: direction of verdict.

The first question presented for our consideration is whether or not the president of a corporation, as such, has authority, by virtue of his office, to bind the corporation and its stockholders by contracts made in its name, where no authority is shown to be invested in him to do so, except that which arises from the fact of his office. This would depend upon whether or not, as a matter of law, the word "president," or the fact that he is president, necessarily denotes the existence of the relation of agency between the corporation and the president.

2. CORPORATIONS: power of officers.

Cook on Corporations, in volume 2, 5th Edition, section 712, discussing this question, says:

The board of directors have the widest powers. All the various acts and contracts which a corporation may enter into are entered into by and through the board of directors. The board of directors make, or authorize the making, . . . of contracts generally of the corporation. They appoint the agents, direct the business, and govern the policy and plans of the corporation. The board of directors elect the officers, and in this connection, it may be added, that at common law there is no limit to the number of offices which may be held simultaneously by the same person, provided that neither of them is incompatible with any other. They institute, prosecute, and compromise, or appeal suits at law and in equity which the corporation brings, or has brought against it.

The office, in itself, confers no power to bind the corporation, or control its property. The president's power, as agent, must be sought in the organic law of the corporation, in a delegation of authority from it directly, or through its board of directors, formally expressed or implied from the habit or custom of doing business. Supporting this, see Morawetz on Private Corporations, section 537; 10 Cyc. 930. Also *Crump v. U. S. Mining Co.*, 7 Grat. (Va.) 352 (56 Am. Dec. 116).

In *St. Clair v. Rutledge*, 115 Wis. 583 (92 N. W. 234, 95 Am. St. Rep. 964), we find this language:

Was the act of the president of the Peerless Iron & Land Company, in attempting to extend respondent's privilege to cut and remove the timber, *ultra vires?* That is the sole question for decision. It is useless to spend time endeavoring to test the matter by the law respecting what a president of a corporation cannot do by virtue of his office; that it gives him no right to make contracts binding on his company; that authority to that end in fact can only be conferred upon him by the articles of organization or some by-law or resolution passed by the board of directors, and that all persons dealing with a corporation are bound to take notice of the limitation upon his authority and notice of its articles of organization and by-laws. If the evidence warranted the finding, as stated in this case, that the president is held out by the corporation as its general agent, and as having authority to do the act questioned, it is bound thereby to the same extent as if authority were conferred in the most formal manner.

In this opinion the court further says:

That an artificial person is estopped from denying that its agents possess all the authority which it gives them the appearance of, the same as natural persons, is just as well established as the principle that the president of a corporation is not, ex officio, its general agent, or possessed of authority to make contracts binding upon it.

It is also a rule governing corporations that the members

of the board cannot agree separately, and outside of a meet-
ing, and thereby bind the corporation. Nor can a minority of
the board meet and bind the corporation. A
majority must be present, and then a majority
of that majority binds the corporation. Sup-
porting this, see *Bak v. O'Neil*, 128 Ala. 192 (29 South. 688).

<div style="margin-left:2em">3. SAME: power of directors: delegation of power.</div>

The board of directors may, however, delegate to an agent
the power to make contracts, but the agency must be created by
the act of the corporation, through its board of directors,
in order that the acts of the agent may be binding upon the
corporation.

In section 712 of Cook on Corporations, volume 2, it is
said:

> All contracts of a corporation are to be made by, or under
> the direction of, its board of directors. The board of directors
> make corporate contracts by a regular vote of the members,
> or by authorizing an agent to make them, or by allowing an
> agent to assume and exercise that power, or by accepting a
> contract, or its benefits, after it has been made by an un-
> authorized agent. And in all cases the board of directors,
> and not the stockholders nor the president, secretary, treas-
> urer, or other agent, is the origin and supreme power in
> corporations to make corporate contracts.

In section 716 of the same author, we find this question
stated as follows: "The question seems to have arisen in many
forms, and the great weight of authority holds that the presi-
dent has no inherent power to represent or contract for the
corporation. His duties are confined to presiding and to
voting as a director."

In *Groeltz v. Armstrong Real Estate Co.*, 115 Iowa, 602,
an action against a corporation to recover commission for the
sale of real estate, this court said:

> However, whatever may be the presumed power in
> general, we think there can be no controversy as to the rule
> that where the general power to make contracts for and

manage the business of the corporation is conferred upon the board of directors, that power cannot be exercised by the president alone; and that is this case, as it will appear from the provisions of the articles above quoted, which are the only provisions on the subject. There is no evidence of any custom or usage on the part of the defendant, recognizing greater powers in the president, than those provided for in the articles, nor of any holding out of the president to the public as having any such extended authority. The president did not therefore have the power to bind the corporation by the contract which it is claimed he made with the plaintiff. There is no evidence as to the authority of Armstrong, the president of the defendant company, to act for it in the sale of real estate, or in the employment of an agent for that purpose, except that found in the articles of incorporation which provide that, 'The affairs of this corporation shall be conducted, and its business managed by not less than five, nor more than ten directors, who shall constitute its board of directors. . . . Such directors shall elect from their own number . . . president, vice president, secretary and treasurer, whose duties shall be prescribed by the by-laws.' . . . So far as appears from the record, no by-laws conferring power upon the president to make contracts for the corporation, were ever adopted.

See, also, *Griffith v. Chicago, B. & P. Ry. Co.*, 74 Iowa, 85; *Templin v. Chicago, B. & P. Ry. Co.*, 73 Iowa, 548.

In the last-mentioned case, this court said, speaking of the president:

There is no evidence that he had been accustomed to make such contracts in behalf of the company from which his authority could be inferred. He had not been held out by the company in any way particularly, and the plaintiffs were not justified in inferring that he had larger powers than those which he actually possessed. . . . Their contention is · . . . that he had such power simply by virtue of his office as president, and without any expressed provision therefor in the articles of incorporation, or authorization by the board of directors. . . . No authority has been cited which so holds, and we conclude that such is not the law.

Therein this court quoted from Taylor on Corporations as follows: ''Virtue officii, a president has very little authority to act for his corporation, and can bind it only by such contracts as plainly come within the most ordinary routine of business.'' This case cites in support of that doctrine *Adriance v. Roome*, 52 Barb. (N. Y.) 399, in which it was held that the officers of a corporation are special and not general agents; that there is no granted power in the name by which they are designated; and they have no power to bind the corporation, except within the limits prescribed by the charter and by-laws, and that persons dealing with such officers are charged with notice of the authority conferred upon them, and of the limitations and restrictions upon it contained in the charter and by-laws.

In Clark & Marshall on Private Corporations, volume 3, section 728, we find the following:

The president of a corporation has no authority to act for or bind it by contracts, or otherwise, by virtue of his office, and therefore his admissions or declarations, although made on behalf of the corporation, are not binding upon it, or admissible in evidence against it, unless they are expressly authorized by the corporation, or are made in the course of transactions which are within the scope of the authority conferred upon him. If the president, however, is intrusted with the general management of the corporation, or the management of a particular transaction, any admission or declaration by him, within the scope of his authority, is the admission or declaration of the corporation.

In this case the opinion recites that there was no evidence whatever that the president had authority conferred upon him in regard to the matter there in controversy, and it was said that the burden rests upon the plaintiff to show this authority. The management of the affairs of a corporation are in the hands of the directors; there is no presumption that the presi-

dent has had delegated to him the power to bind his corporation for the payment of the debt of another.

In *White v. Elgin Creamery Co.*, 108 Iowa, 522, an action to recover a balance due on a contract to pay certain prices for butter made from milk furnished by the plaintiff and others, less four cents a pound for marketing, the contract was made by one Mark Sands, who claimed to be the agent of the defendant corporation and who claimed to have derived his power to make the contract from the president of the corporation. The court, in presenting the case to the jury, instructed them that they might presume that the president of the defendant company was authorized to confer authority upon Mark Sands to make the contract. This court, in passing upon the question, said that it was claimed in the suit, by appellant corporation, that the president was not presumed to have authority to make the contract. The law, however, seems to be well settled that, in the absence of any showing to the contrary, the president of a corporation will be presumed to have authority to act in all matters arising in the ordinary course of business. As the head of the corporation which, of necessity, must act through some agency, the natural inference is that he, as its president, had been endowed with the power to direct its operation and management in the transactions for which it was organized. The court, in support of the above proposition, cites *Sherman Center Town Co. v. Swigart*, 43 Kan. 292 (23 Pac. 569, 19 Am. St. Rep. 137). That court, in stating the doctrine, said: "Where the president and secretary of a corporation execute a contract in behalf of the company, which is regular on its face and not shown to be outside of the regular business of the corporation, it is *prima facie* evidence that it was executed with authority. . . . Where the president and secretary of a corporation act openly and publicly," as the agents of the company, with full knowledge and acquiescence of the directors "in making contracts, and generally in managing its business, with the understanding and acquiescence of the directors that they shall so act, the corpo-

ration will not be relieved from liability upon the contracts so made, and upon the mere ground that the directors failed to formally confer authority on these officers by vote or resolution entered on the records of the corporation. . . . The general understanding among the directors was that the president and secretary should act for the company in making contracts, and in managing the business affairs of the corporation. . . . The legitimate inference to be drawn from the testimony is that they were legally authorized to act for the company, and that it should not escape liability . . . on the mere ground that the authority was not expressly conferred by resolution entered upon the records of the corporation.''

In the case of *National State Bank of Terre Haute v. Vigo County Natl. Bank,* 141 Ind. 352 (40 N. E. 799, 50 Am. St. Rep. 330), cited in *White v. Elgin Creamery Co.,* we find the following language:

The president of a corporation, by virtue of his office merely, has very little authority to act for the corporation. His powers depend upon the nature of the company's business, and the authority given him by the board of directors. The board of directors may invest him with authority to act as the chief executive officer of the company. This may be done by resolution or by acquiescence in the course of dealing and manner of transacting the business of the corporation. . . . One dealing with the president of a corporation in the ordinary course of business, and within the powers which the president is generally accustomed to exercise without objection from the directors, has the right to assume that the president has been invested with those powers.

The plaintiff, in the case at bar, claims in his petition that J. H. Rohret employed him to commence and prosecute the suits. There is no allegation that Rohret had any authority to employ plaintiff and bind defendant, other than that arising out of the fact that he was president of the defendant company. Nor does the plaintiff in his evidence claim that the defendant corporation employed him, or authorized its

4. SAME: management of corporation: power of president.

president, Rohret, to employ him and institute the suit against
Crow, except such authorization as may be found in the action
claimed to have taken place in a meeting of the board of di-
rectors on September 18th, to which more particular refer-
ence will be made hereafter.

The articles of incorporation were introduced in evidence,
and the only provision touching the management of the cor-
porate business is found in article 6, which provides: "The
affairs of this corporation shall be managed by a board of
five directors who shall elect a president, vice president, and
secretary, and such other officers and agents as they see fit, and
fix the salaries of same. And we hereby consent that Edwin
Hummer, O. W. Eddy, E. G. Cotter, F. H. Crow and J. D.
Beeney, act as such directors for the first year." There were
no by-laws adopted by the corporation. At least, none were
introduced in evidence.

There is nothing in the organic law of the corporation
that authorized the president, as such, to represent the cor-
poration in the transaction of its business, or to make con-
tract binding upon the corporation, and, under the rules here-
inbefore indicated, we think in this case he had no such author-
ity by virtue of his office.

We come then to consider whether or not the board of
directors conferred upon the president authority to bind the
company in the bringing of the prosecution of these suits.

It is claimed that on the 7th day of September, 1909, the
board of directors met, without any written notice of the meet-
ing served on any of the directors, and at which some of the
directors were not present, and at this meet-
ing a motion was made and carried that Fred
Crow be requested to make an accounting and
file the same by the next meeting. The next meeting there-
after, as the record discloses, was on the 18th day of Septem-
ber. A record of this meeting was kept in a book not used by
the corporation as a minute book. No minutes of the proceed-
ings of the board of directors had ever been kept in this book

5. SAME: minutes
of corpora-
tion: evidence.

before. At this meeting O. W. Eddy was secretary *pro tem.* A record of this meeting was made in the same book in which the record of the 7th was made, written in there by R. K. Luse several days after the meeting had adjourned, and claimed to have been written from minutes made by the secretary, Eddy, and from the memory of Luse of the meeting. The memorandum from which these minutes were made was not produced. This record was never approved by the board. Luse was not secretary, or authorized to make this record. He says in his testimony, "I was not authorized or directed by any one to make this writing in the book, and was not secretary." This book was not the regular minute book kept by the corporation to record the action of its board of directors. This record, however, was introduced in evidence in this trial as a record of the meeting of the board of directors. It was clearly incompetent as a record to bind the corporation. "This record," the author of the record says, "was not a copy of the minutes of memorandum made by Eddy, the secretary *pro tem,* and, being made from memory, it might not be worded exactly. I made this record simply because I wanted a memorandum of the meeting." This record, as introduced in evidence, reads as follows: "Sept. 18, 1909. Directors present, J. H. Rohret, O. W. Eddy, George Clearman and R. K. Luse. O. W. Eddy was elected Secretary *pro tem.* George Clearman moved that the manager be authorized to see an attorney and have him ask the court to compel Fred Crow to make an accounting. Carried."

O. W. Eddy testified, touching this meeting, as follows:

I did see some of the directors on September 18th. I received no written notice that a meeting of directors would be held, but somebody, I think Mr. Luse, told me of the meeting, in the forenoon before the meeting was held. Some of the directors assembled at the exchange building of the company on the afternoon of September 18, 1909. I should judge it was about 2 o'clock. When I went there, Mr. John Rohret was at the building, Mr. Clearman came very shortly after that. Mr. Luse was not there at the time I came, nor

at the time Mr. Clearman came.  After the meeting had
been called to order by Mr. Rohret, I requested the president
to go and get Mr. Luse and bring him to the meeting, and he
did so.  I asked Mr. Rohret if he had notified Fred Crow,
and why he wasn't there at the meeting, and he said he tried
to get Mr. Crow over the telephone and was unable to get
him, but that he didn't believe Mr. Crow would come because
he went away mad at the last meeting, I suppose the 7th is
what he referred to.  In reply to that, I said I thought it
might affect the legality of that meeting.  The first thing
Mr. Rohret did, after calling the meeting to order, he ap-
pointed me secretary *pro tem*, and I acted as such.  The
matter came up about Fred Crow making an accounting.
As to an accounting for how long a time, I don't know as
that was discussed.  In the discussion about Fred Crow
making an accounting, I said that Mr. Crow had told me just
previous he was willing to make an accounting, and I so
stated to the directors.   Mr. Clearman suggested that it might
be a good plan to have an attorney write Mr. Crow a few
letters, and get an accounting without resorting to the costs
of litigation.   There was not anything said, at that time, about
bringing suit against Mr. Crow.  It was suggested that we
get an accounting without resorting to litigation by having
an attorney, without going to litigation.   After this informal
discussion, I made a motion in reference to seeing an attor-
ney.  I made the motion upon the strength of Mr. Clear-
man's suggestion.  The motion, as I recall it, was: 'Move
that the manager be directed to see counsel, and to have him
ask Fred Crow to make an accounting of all the telephone
company's money that he had received.'  I took down this
motion in the language I have stated, as I recall it.  Before
I made this motion, it was understood that we were to call
a meeting of the board of directors, and to make an estimate
of what it would cost to bring a suit against Fred Crow, if
he didn't make an accounting without a suit.

It appears from the evidence that R. K. Luse was then
manager of the defendant company.  It does not appear that
he did anything under this resolution in the way of procuring
Crow to make any settlement.  The plaintiff claims that the
contract of employment, under and by virtue of which the

services sued for were rendered, was made some time in March or April of 1909, and several months prior to this meeting. It appears that much of the services for which suit was brought was rendered before this meeting. The suit against Crow, in which plaintiff claims to have rendered services, was instituted in October following, and prosecuted, under the direction of Rohret, to an unsuccessful issue. Under this record it cannot be said that the defendant corporation, by and through its directors, employed, directed, or delegated to Rohret authority to commence and prosecute this suit for and in behalf of defendant corporation. At these meetings held, to which reference has been made, Rohret did not disclose to the board of directors the fact that he had already employed the plaintiff, and had already, on his own motion, commenced an investigation of Crow's account with the corporation. Nor does it appear that the board of directors had any knowledge of the plaintiff's employment, or the action of Rohret in respect thereto.

In view of the fact that the court did not submit these questions to the jury, the defendant is entitled to the most favorable construction that this testimony will bear, and, from the testimony of Eddy it affirmatively appears that the manager Luse was appointed to act for the corporation, touching an accounting with Crow, and not the president. We think there was nothing in these meetings which authorized J. H. Rohret to employ counsel, institute and prosecute these suits in the name of the defendant company, and bind the company in respect thereto by contracts made by him.

The next question is whether or not the defendant, by its conduct, had held out Rohret as authorized to act for it in respect to the conduct and management of its business, and such conduct as would authorize the inference that he had authority to act for the company and employ the plaintiff. As to this, the record is silent, and surely it cannot be contended that the bringing of the suit against an officer and stockholder of the

6. SAME: authority of officer to contract: agency: evidence.

company, who owned two-thirds of the stock, was the ordinary business of the corporation, so that he does not even come under the rule that authorizes the president to prosecute the ordinary business of the corporation.   There is no evidence that he in fact had acted for the corporation in any business transaction other than this in which he claims to have acted, or that he was held out by the corporation in any way as having authority to act for and bind the corporation in relation to the control and management of its business; and this distinguishes this case clearly from the case of *White v. Elgin Creamery Co.*   The evidence, so far as it makes any disclosures upon this question, shows that the ordinary business of the company was conducted through and by other officers than the president.   The only business he seems to have ever transacted for the company is to preside at the meeting of its board and vote as a director thereat.   There is no evidence that any benefits arose to this corporation from the prosecution of these cases; that they received any benefits therefrom.   The apparent authority which binds the corporation by the acts of its president, in making contracts in its name, must be considered with reference to the character of the business involved.   Cases have arisen in which a corporation was bound by the acts of its president, where the corporation permits the president, for any considerable length of time, to transact all the business of the corporation in its name, and where the board of directors customarily omits to hold meetings for the purpose of directing the affairs of the corporation, apparently leaving its business affairs solely to be looked after by its president, and in those cases his authority to do those things which, by such conduct, he is apparently authorized to do is just as binding upon the corporation as if the power were directly conferred upon him.   It is apparent, then, that the president, by virtue of his office, alone, has no power to bind the corporation by any contract unless the articles of incorporation or the by-laws authorize him to do so; that where the articles of incorporation and by-laws do not grant to him this power to represent the

company as its agent in the transaction of business, then it must appear, before the company can be bound, that this authority was delegated to him by those authorized by the articles of incorporation or by-laws to manage and control its affairs. Thus, if the affairs of the company are, by the articles of incorporation and by-laws, to be managed and controlled by the board of directors, then the president can only do such things as the board of directors may authorize. This authority may be directly granted by the action of the board as such, or it may be implied from the nature of the business, and from the fact, if proven, that the president was held out by the corporation as having authority to transact its business, from which an estoppel may arise.

There are cases in which the ordinary business of a corporation is conducted by its president, and the company receives the benefits of contracts and purchases made by him, and in these cases it is held that the natural inference is that he, as its president, has been endowed with the power to direct its operation and manage the transactions for which it was organized. This is only another way of showing the delegation of power to manage the business of the corporation. The character of the business transacted, the purpose for which the corporation was organized, the fact that the president was put in charge of that business, and in the management and control of it, even where the power is vested in a board of directors to manage the business—the inference may be from that that the board has delegated him authority to act for and to bind the corporation. These are questions of fact, purely questions of fact.

Such is the rule in *White v. Elgin Creamery Co.* and this is the rule of agency. Where the principal allows another to act in the capacity of agent, with apparent authority to act for and in behalf of the principal, and the principal receives the benefits, he is estopped from denying the authority of the agent to act for and bind him. A special agent can only bind his principal within the limit of the authority granted. A

general agent may bind his principal by all acts which come within the apparent scope of the authority granted him.

There was evidence in this record that the president had no power to do the acts by the doing of which this defendant is now sought to be bound. But in this case, as there are no facts disclosed by the record showing the course of business in which Rohret had been engaged for the company, or that he had ever transacted any business for the company, or that the business attempted to be transacted here had relation to the purpose and object for which the corporation was organized, or in the furtherance of its interests in that respect, there was nothing from which the power to make this contract could be inferred.

It is next contended by the plaintiff that the defendant is now estopped from claiming that Rohret did not have authority to bind the company in the commencement of these suits, and in the employment of plaintiff to prosecute; that, even though Rohret did not have authority, by virtue of his office, to make the contract sued on, and even though no authority was delegated to him by the board of directors to commence and prosecute these suits and employ plaintiff, yet that his conduct in so doing was ratified by the defendant, through its proper officers, and that the defendant cannot now be heard to set up the want of original authority in the president to bind the defendant, in respect to the matters charged, and this estoppel is claimed to rest upon a certain stipulation entered into in certain quo warranto proceedings entitled *State of Iowa ex rel. Newkirk et al. v. John H. Rohret et al.*, begun in the district court of Johnson county, January 27, 1910.

7. SAME: estoppel: evidence.

It seems that, prior to the commencement of this suit, the stockholders held the regular annual meeting for the purpose of electing officers; that some controversy arose, and the stockholders divided into two factions, and a set of officers was elected by each division. Thereafter this suit of *Newkirk v. Rohret* was commenced by certain of the parties, who

claimed to be elected officers of the defendant corporation, against certain other parties, who also claimed that they were elected officers, and this suit was brought by the plaintiff therein against the defendants therein to test the right to the office, and was purely a controversy between the contending factions for the purpose of determining who was rightly elected to hold office in defendant's corporation. There were twenty-two stockholders, and the only question involved in this proceeding was, who were elected directors at the regular annual stockholders' meeting? The corporation, as such, was not made a party to this proceeding, or to any proceeding involving this question. At the conclusion of plaintiff's evidence in this cause, the parties to the suit entered into a stipulation or agreement among themselves that the court should find that J. H. Rohret, Chas. S. Crow, Ralph Luse and Fred H. Crow were duly elected at the annual meeting, as directors of defendant corporation, and that George Clearman had not been elected a director, and that there was a vacancy; that James Ward should be solicited to accept the office and fill the vacancy, and, in the event he refused, that Fred Rapp should be solicited, and that in the event he refused, that the then presiding judge of the court, Hon. R. P. Howell, should select one to fill the vacancy; that in the event Judge Howell had to appoint, or in the case of the acceptance of any one to fill the vacancy, an election should be called by the judge, and notice given thereof to the stockholders. Fred H. Crow, John Crow, H. J. Rohret, and Ralph Luse all agreed to vote at the election for the party accepting, whether accepting upon solicitation or upon appointment by the judge, and the party so selected declared the candidate elected to fill the office of the fifth director in place of Clearman. This further agreement was then and there entered into between the parties: "Nothing in this stipulation is to interfere in any manner with the prosecution of the case against Fred Crow for an accounting, and that the employment of John J. Ney for the prosecution of said case is to be continued, each party to the

suit to pay his own costs, and one-half of the court costs and reporter's fee.''

There is a controversy in the evidence as to who was present at the time this stipulation was made, and as to the number of stockholders present. Eddy and Crow both testified that they never heard of this agreement, touching the continuation of the case against Crow, and the continuation of plaintiff in the employment of the defendant, until the same was read by the reporter, as a witness, in this case. It appears that this stipulation was dictated to and taken down by the shorthand reporter, and it does not appear that the same was ever transcribed, or filed in any other way in the cause.

At the time this suit was commenced, it was not determined who were the directors elected by the stockholders to represent it at the previous annual meeting. The matter was then in dispute, and the suit was brought for the sole purpose of determining who had been legally elected to represent the company. It appears from the record that the plaintiff was employed, not to represent the company, but to represent one side of the contending parties in this controversy, and, under the stipulation, the costs made in the proceeding were taxed one-half to each of the contending parties, and each party directed to pay his costs.

George Clearman, a witness for the plaintiff, testified in the case of State of Iowa v. Rohret, Luse, and himself: ''Judge Ney was employed as one of our attorneys. Rohret, Luse and myself employed him to appear for us in that case. On the trial, I came in after the agreement had been made, but it was read to me. I did not have any especial agreement with an attorney. Mr. Rohret was running that. I didn't take very much interest in it.''

Chas. S. Crow, one of the directors, testified, touching this stipulation, as follows:

Q. Now tell the jury whether or not you were told of

the fact by any one that day that there was going to be any stipulation made, or anything put in the stipulation to the effect that John J. Ney was to be permitted and employed to act in the case of Eastern Telephone Co. v. Crow. A. No. Q. I will ask you whether, at the time or any time thereafter, you had any knowledge that the stipulation entered into in that case contained any such provision as the following: 'And it is further agreed that nothing in this stipulation is to interfere in any manner, with the prosecution of the case against Fred Crow for an accounting, and that the employment of John J. Ney for the prosecution is to be continued.' A. I had not that knowledge. (He then said:) A knowledge of this fact did not get to me until I got here in court, and in this action—the case now on trial.

He further stated that he was a director during the year 1910, and attended all the meetings, and that there was no motion or resolution made by the directors authorizing the employment of Ney, as an attorney, in any matter concerning the telephone company.

Rohret testified:

This controversy between the candidates for office grew out of the fact that if the directors favorable to Crow should be elected, the case against Crow might be dismissed, and to prevent that, it was necessary that such directors should not be elected, and this suit involved no question except that relating to the right of the several contestants to the office of director.

The attorneys in the case were not the attorneys of the defendant. They were the attorneys of the contending parties. The stipulation was not made by the directors of the company, nor by its stockholders, nor by any authority emanating from them. There is a serious question in the record as to how many of the stockholders were present. There is positive evidence that some of the directors, if present, did not hear or know of the stipulation relied on. There is no direct evidence that the stockholders knew of this stipulation,

or, at least, that a majority of them knew of it at the time it was entered into, or that they assented to it, except the mere inference to be drawn from the general statement that all parties interested were present. No one seems to have been able to give the names of any of the stockholders who were present, or who heard this portion of the stipulation read, and clearly the knowledge of an officer in a contest in which he seeks to secure for himself a position as director is not the knowledge of the corporation. He is not then acting for the corporation. He is not representing the corporation in any sense. Mere silence would not be acquiescence. The parties were making their own stipulation in a suit between themselves, with no power, on the part of the stockholders, even if present, to control or stop their action. They were not parties to the suit, and had no voice in its disposition.

It was at least a question for the jury, and not for the court, upon the whole record as to what in fact transpired, and who was present, who took part in, and who assented to the stipulation relied on. The court could not say, as a matter of law, under this record, that this stipulation, under the circumstances, was a ratification, on the part of the corporation, of the act of the president in employing the plaintiff to prosecute the suit against Crow. It took more than a mere agreement of these contesting parties, made perhaps in their own interests, to bind the corporation.

Objection is urged to the action of the court in permitting plaintiff to propound to certain witnesses called in his behalf certain questions, for the purpose of laying the foundation for and fixing the amount of plaintiff's recovery. These questions were propounded touching the services rendered by the plaintiff in this quo warranto proceeding. The question is very long, and covers several pages, and we will only set out that portion of it which has relationship to this branch of the case.

8. SAME: evidence: value of services: hypothetical questions.

Q. Assuming that after the election in 1910 this heavy stockholder [meaning Crow, who was the defendant] and the stockholders who were favorable to carrying on the suit, and who employed the attorney lined up in the election; that, after the election, a case was brought here in the quo warranto proceeding to test the right of the then officers holding possession of the property, and controlling the corporation; that the attorney, for the purpose of maintaining his standing in this case, and the plaintiff's standing in this case, defended the right of his clients, or the right of the then president's position, in behalf of his client; that a compromise was effected there, and a fifth director put in, appointed by the court; that the attorney was engaged in the trial of the quo warranto case and kindred cases involving that election for six days in the district court, and argued them, these arguments, time spent in the quo warranto case referred to, all being included in the days in court, some twelve days heretofore mentioned, and then having stated the time spent, and the services rendered in the main case, asked the witness—Q. what would you say the reasonable value of an attorney's services rendered in that behalf, as a sole attorney having charge of that case and acting for the Eastern Telephone Company, would be?

The witness answered, "$2,250 or $2,500." The whole question, which is not herein set out in full, contained statements of fact which may have been known to the attorney propounding the questions, but which do not appear in the record. This question we think highly improper and prejudicial, although the court stated to the jury in its instructions that the only question for it to determine in this case was the value of the services rendered by the plaintiff; that the testimony, as to what was done in the quo warranto case, could only be considered by it in the event it found it was necessary for the plaintiff to render these services in order to prevent the dismissal of the case of the Eastern Iowa Telephone Company against Crow, and in the event it did so find, then it might take the same into consideration in determining the value of the services rendered by the plaintiff in the case against Crow.

It appears that the plaintiff's services were not rendered

in this quo warranto case for the defendant. It is not claimed that the defendant employed the plaintiff, and how the plaintiff can recover for services rendered in an effort to prevent the party whom he serves from dismissing the suit brought in the name of the party is to introduce a new doctrine into our jurisprudence. A party to a suit has always the right to dismiss a case brought in its name.

It is true that the court, during the time that this long-involved question was being propounded, at one point in the question, sustained the objection of counsel for the defendant, but, notwithstanding this, counsel continued the question, stating many things that were not shown in the record as a basis for the answer, and at no time withdrawing any portion of the question. Nor did the court limit the question thereafter to the matters subsequently drawn out. It is true the court, when objection was urged after this question was finished, in which point was raised that the question involved many things not shown or appearing in the evidence, and contained facts not supported by the evidence, and included other services than that rendered in the case upon which suit was brought, said: "The statements that are claimed misconduct were taken care of at the time. These are not considered in the question. Eliminating these, the objection is overruled. That eliminates the first part of the question, and some portions in between." The court did not indicate to the jury, in its ruling, what part of the question referred to as the first, or what referred to as portions in between, was eliminated. We think the objection to the whole question, in the form in which it was presented, should have been sustained, and that there was error in overruling. No matters should be injected into a hypothetical question that have not support in the evidence. Especially is this true when a witness is called to place an estimate on the value of services rendered, based upon a question assuming to state facts as a basis for such estimate.

It is apparent, from the whole record made in this case,

that the court erred in allowing. the jury to consider, as a basis for estimating damages, services rendered by the plaintiff in the quo warranto case, even upon the theory upon which the court submitted this matter to the jury. It appears that in this quo warranto proceeding the plaintiff was employed by the party to the suit. There is evidence to show that he has not received full payment for these services from his client. There is no evidence in this record justifying the court in submitting the first count in any form, and the court erred in allowing the plaintiff to prove the value of services rendered in that cause, and in allowing the jury to consider such evidence in estimating the amount of plaintiff's recovery.

There are other errors assigned, but we think they are sufficiently covered by what has been said, and this opinion has already proceeded at great length.

For the errors pointed out, we think the case should be reversed, and is *Reversed*.

WEAVER, C. J., and DEEMER, and WITHROW, JJ., concur.