FREDERICK C. H. ARENTZ, Appellant, *v.* MORSE DRY DOCK AND REPAIR COMPANY, Respondent.

(Argued November 27, 1928; decided December 7, 1928.)

*Ellwood Colahan* and *Cyril S. Stanley* for appellant.

*Courtland Palmer* for respondent. " Permanent employment " means employment for an indefinite time, which may be severed by either party. (*Rape* v. *Mobile & O. R. Co.*, 136 Misc. Rep. 38; *Sullivan* v. *Detroit, Y. & A. R. R. Co.*, 135 Mich. 661; *Pennsylvania Co.* v.

*Dolan,* 6 Ind. App. 109; *Lord* v. *Goldberg,* 81 Cal. 596; *Faulkner* v. *Des Moines Drug Co.,* 117 Iowa, 120; *Davidson* v. *Laughlin,* 68 Pac. Rep. 101; *Louisville & N. R. Co.* v. *Offutt,* 99 Ky. 427; *Perry* v. *Wheeler,* 12 Bush, 541; *Elderton* v. *Emmens,* 4 C. B. 479; *Roddy* v. *McGetrick,* 49 Ala. 159.)

CRANE, J. This action is brought for the breach of an alleged contract of employment. The defendant is engaged in a general dry dock and ship repairing business with its shipyard at Fifty-sixth street, Brooklyn, N. Y. The plaintiff, prior to the month of January, 1920, was a sea captain by profession, holding an unlimited Norwegian master's license for sail and steam vessels. Having given up the sea during the war, the plaintiff came to reside with his wife in the Province of New Brunswick, Canada, where he was engaged in farming. A relative in Philadelphia, having called his attention to an advertisement for help, which the defendant had inserted in the newspaper, the plaintiff answered it, and was subsequently engaged as an assistant to the president, Mr. Morse. The plaintiff commenced work for the defendant in January of 1920, and remained until January of 1924, when he was discharged because of hard times, or the slackness of business. At first he received a salary of $4,800 a year, which was increased to $6,000 a year, payable monthly.

The plaintiff seeks damages for his discharge because he alleges and attempts to prove that he was employed for life or at least for as long a time as the defendant remained in business. The allegation in his complaint is that the plaintiff and defendant entered into an agreement wherein and whereby among other things, the plaintiff agreed to give up his business and profession as a shipmaster and to enter into the permanent employment of the defendant in New York city, as assistant to the vice-president and general manager.

An agreement to employ the plaintiff in such a position for life is so unusual that we would expect to find it contained in some writing. On the contrary, the plaintiff has sought to establish it in the conversation which he had with Mr. Morse when engaging and taking him into his employ, and rests it entirely in the use by Mr. Morse at that time of the word " permanent." The plaintiff says that Mr. Morse told him that his work or position would be permanent. An understanding of the relations of these parties will, I think, clearly indicate that no such extensive agreement was made as is claimed by the plaintiff.

The plaintiff was a Norwegian sea captain who, because of the war, or for other reasons, had retired to a farm which his wife owned in the Province of New Brunswick, Canada. He tired of farming and thought of going into business or some employment for which his experience had fitted him. The Morse Dry Dock and Repair Company needed help, and apparently had inserted an advertisement in the papers to get the required assistance. The plaintiff's attention was called to the advertisement; he communicated with Morse and came to New York. What occurred is stated by the plaintiff as follows. " I told Mr. Morse I came down to see him in answer to his wire about the position or opening he had with the Morse Dry Dock & Repair Co. I showed Mr. Morse my credentials. He had discharged his son and he wanted more help, and I showed him my credentials, and Mr. Morse wanted me to start right away, and told me that ' Your salary is $4,800 a year; your headquarters will be the New York office, and I want you as my assistant.' I told Mr. Morse that I had been following the sea for twenty years and I would never think of taking a position anywhere except it was of a permanent character, and Mr. Morse referred to having had men working for him for thirty years and more, and right there I accepted Mr. Morse's offer and accepted

the position. He told me it was a permanent position and said that the salary would be increased as business improved."

Assuming all this to be true, what did the parties mean by the use of this word " permanent " position? Did Mr. Morse engage the plaintiff for life on such short acquaintance, or did he simply intend to convey the meaning that the position was steady employment, steady work, not that of a temporary nature? Building a ship is temporary work; when the ship is finished, the employment is at an end, so far as that one ship is concerned. The same may be said about the job of painting a house, or a fence. A lawyer may have occasion to employ extra help under pressure. Such employment is merely temporary as compared to the steady work of the regular employees. Many businesses have employees who are extras, or fill temporary positions only required for a particular job or during certain seasons. That this is the sense in which these words were used in talking with the plaintiff is to be gathered from the language of the plaintiff himself, when speaking of his other employments. After his discharge, he was employed by engineers, the Sherman Corporation, and by Swift & Company. He says of such work, " That was a temporary position. I started in March and finished in July. * * * I just made a general investigation for Swift & Company here about the marine business. That was also temporary."

" Permanent," as defined by the dictionary, has different shades of meaning, like most words. One of these is " something which lasts or endures, constant, as opposed to temporary." (Webster's International Dictionary.) Bouvier's Law Dictionary defines " permanent employment " as " employment for an indefinite time, which may be severed by either party." (See, also, 3 Words & Phrases [second series], 970.)

In the plaintiff's letter, written March 14, 1921, he

says: " As I mentioned to you this morning, I started in your concern with the verbal understanding that my position was a permanent one, and you also at that time referred to you having had men working for you for thirty years or more. Times have changed too much, and it is far from my nature to refer to this ' gentleman's agreement ' as binding. It is my opinion that no bargains are satisfactory except it is to be the mutual interests of both parties concerned. * * * Of course it is up to you to decide if you want me to stay in your concern where I always have felt so well. I am willing, of course, but only on the condition that it is a permanent position, and I can see no reason why my limit should only be the Scandinavian line." This letter was written at a time when Mr. Morse proposed to let the plaintiff go. Thereafter, he was continued until January of 1924, as above stated. It may be from this letter that the plaintiff considered that he had a life employment. But it remains for the court to determine whether such was the agreement and contract of the parties. No length of time was ever mentioned. The plaintiff was taken in, as I have stated, in response to an advertisement; he was put to work at once, without Morse knowing anything about him except from his recommendations. He was assured that the position would be permanent. It lasted about four years. Are we justified in saying that under all these circumstances the plaintiff has proved a life employment, or what amounts to about the same thing, an employment which is to last as long as the corporation does business, and the plaintiff's services are satisfactory? Such contracts at least should be specific and definite, with little or no room for misunderstanding, even if they are not required to be in writing.

Wherever these words, " permanent employment," have been used in contracts which have been made between employer and employee, under circumstances as they appear in this case, they have been held to mean

a steady employment, a steady job, a position of some permanence, as contrasted with a temporary job or a temporary employment. Standing alone and by themselves they do not mean life employment. (*Sullivan* v. *Detroit, Y. & A. A. Ry.*, 135 Mich. 661, p. 671.) An agreement to give a person permanent employment means nothing more than that the employment is to continue indefinitely and until one or the other of the parties wishes for some good reason to sever the relation. (*Lord* v. *Goldberg*, 81 Cal. 596; *Rape* v. *Mobile & Ohio R. R. Co.*, 136 Miss. 38; *Texas & Pacific Ry. Co.* v. *Marshall*, 136 U. S. 393; *Perry* v. *Wheeler*, 75 Ky. 541.)

All these cases differ from those in which from the circumstances of the case and from the consideration which has been furnished, it is evident that one party intended to employ the other for life or a definite period. (*Pierce* v. *Tenn. Coal, Iron & Railroad Co.*, 173 U. S. 1; *Rague* v. *N. Y. Evening Journal Publishing Co.*, 164 App. Div. 126; *Pennsylvania Co.* v. *Dolan*, 6 Ind. App. 109.)

It must follow, therefore, that the employment of this plaintiff by the defendant was in a steady position as assistant or general manager, to continue at the will of the parties. Plaintiff was not obliged to stay with the defendant for life, neither was the defendant obliged to employ him beyond the time when in good faith it had no further use for his services. The complaint, therefore, was properly dismissed by the trial judge at the end of the plaintiff's case for the reasons here stated.

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., POUND, ANDREWS, LEHMAN, KELLOGG and O'BRIEN, JJ., concur.

Judgment affirmed.