## EGGERS v. ARMOUR & CO. OF DELAWARE.

### No. 12234.

Circuit Court of Appeals, Eighth Circuit.

Aug. 4, 1942.

Harvey Uhlenhopp, of Hampton, Ia., for appellant.

R. F. Clough, of Mason City, Ia., for appellee.

Before SANBORN, THOMAS, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

Walter Eggers (hereinafter referred to as the plaintiff) brought this action to recover damages for the breach of a contract for lifetime employment which he alleges Armour and Company (hereinafter referred to as the defendant) entered into with him on or about January 1, 1939. The defendant

denied having made the contract, and asserted its invalidity if made. The case was tried to a jury. At the close of plaintiff's evidence the court directed a verdict for defendant upon the ground that there was no competent evidence that defendant had entered into the contract alleged. From the ensuing judgment, the plaintiff took this appeal.

The plaintiff asserts that his evidence, including that which he offered and which he charges the court improperly rejected, was sufficient to entitle him to have submitted to the jury the issue of the existence of the contract, and that the court erred in directing a verdict. The defendant argues that the plaintiff's evidence, adduced and offered, was insufficient to establish the existence of the contract alleged, and that the trial court properly directed a verdict for the defendant. It also contends that if the plaintiff had the alleged contract with the defendant, the contract was, in any event, terminable at will, and that defendant was entitled to a directed verdict for that reason, also.

The facts which the plaintiff's evidence, including his offers of proof, tended to establish are, in substance, as follows: The plaintiff is a resident of Mason City, Iowa, and at the time of the trial was thirty-three years of age. For approximately ten years prior to October 28, 1938, he had been continuously employed by the defendant in the meat packing plant which it owns and operates at Mason City. On October 28, 1938, the plaintiff suffered injuries in the course of his employment while engaged in carrying beef, and was laid up until December 17, 1938, when he returned to the plant and was put to work first as a watchman and then as a janitor. A few days after his return and while he was working as a janitor, he again injured himself and went to the hospital, where he was treated by defendant's local physician. Late in December, 1938, and before plaintiff had returned to work after his last injury, E. J. McCann,[1] who was in charge of employing men for the defendant's plant at Mason City and was also in charge of safety work and of Workmen's Compensation at the plant, had the plaintiff come to his (McCann's) office in the plant. The evening before the plaintiff's visit to the office, McCann had made the statement to plaintiff's wife that the defendant was "desirous of getting Mr. Eggers

back on the job and that the company felt obligated to him, and that a written contract had been drawn up and sent out from Chicago, giving Mr. Eggers a life job at the plant, at wages at least as great as he was receiving at the time of his injury." Mr. McCann, when the plaintiff called at the office, handed him three papers, saying: "Walt, these are all drawn up by Chicago, ready for you to sign so you can have a lifetime job. * * * I think it would be a good thing for you, Walt." McCann then asked the plaintiff if he would agree to work, and was advised that he would. The plaintiff took the papers handed to him by McCann to J. E. Williams, an attorney of Mason City, and conferred with Mr. Williams in regard to them. According to the testimony of Mr. Williams, the papers appeared to be a contract, in triplicate, between Jacob E. Decker & Sons, Armour Branch (which is evidently the name of the Mason City division of defendant), and the plaintiff. The contract purported to be executed by the defendant by a vice-president and a secretary, and the name of E. J. McCann, employment manager, appeared in the left-hand lower corner. Mr. Williams could not recall what name appeared as vice-president and what name as secretary. The substance of the contract was that the defendant "was employing Walter Eggers as a watchman or at other work that he was physically able to perform, the period of the employment to be for life or until—or for such time as he was able to appear and do that kind of work, either watchman work or other work which he was capable of performing, and the pay was to be the same as he was receiving at the present time, or more, and the hours the same as he was putting in at the time." After his conference with his attorney, the plaintiff signed the contract in triplicate and delivered the three drafts to Mr. McCann, who told the plaintiff that "one I (McCann) get, and the other one the insurance people get, at Chicago," and that the third was a copy. The plaintiff never received a draft of the contract or a copy of it, although he asked for one. After he had delivered the contract to McCann, the plaintiff returned to work at the plant and was given the kind of work that he was able to do and the kind contemplated by the alleged contract. The disability resulting from the injuries which he had received while working for the defendant was such as to prevent him from doing heavy work, but not from doing light

---

[1] E. J. McCann died before the case was tried.

work. In December, 1940, the defendant discharged the plaintiff, and has since refused to employ him or to pay him wages, although he has been, is, and will continue to be, ready, willing and able to do the kind of work contemplated by the alleged contract. About one year after the making of the alleged contract, C. J. Walker, defendant's superintendent at its Mason City plant, being about to leave, called plaintiff into the superintendent's office and in the presence of plaintiff stated to C. D. Good, who was Walker's successor, "This is the man I was telling you about, that we have given a life job here at the plant." Shortly before plaintiff was discharged, C. D. Good, the superintendent, came to the place in the plant where plaintiff was working, and in his presence said to a Mr. Perkins, a foreman, that "they would have to let one man go and that they couldn't let Mr. Eggers go because he had a permanent job at the plant."

The plaintiff in his amended complaint alleged that the contract for lifetime employment was made for the purpose of settling his claim for compensation and damages, but at the close of his evidence that allegation was withdrawn, there being no proof to support it. There was evidence that, after he was injured, plaintiff did receive workmen's compensation for a time and that he signed releases in December, 1938, when he first returned to work.

The applicable law is that of Iowa. Apparently no similar situation has been considered by the Iowa courts. There is no ground for believing that the law of Iowa governing this case differs from the law generally applicable.

■ We have no doubt that the defendant could obligate itself to furnish the plaintiff for life with such work as he would be capable of performing in his disabled condition and to pay him wages so long as he was able to render service, and that his promise to remain in defendant's employ and render the required service would be a sufficient consideration to support the obligation. The rule is that a contract for lifetime employment will be given effect, according to its terms, if the intention of the

parties to make such an agreement is clear, even though the only consideration for it, so far as the employer is concerned, is the promise of the employee to render the service called for by the contract. Littell v. Evening Star Newspaper Co., 73 App.D.C. 409, 120 F.2d 36, 37.[2] See, also, Arentz v. Morse Dry Dock & Repair Co., 249 N.Y. 439, 164 N.E. 342, 344, 62 A.L.R. 231, 234; Roxana Petroleum Co. v. Rice, 109 Okl. 161, 235 P. 502, 506; 35 Am.Jur. 460, § 24.

■ Where the words "permanent employment" are used in a contract of hiring and it is not clear from the language of the contract, or from the circumstances surrounding the making of it, or from the consideration furnished, that the parties intended that the employment was to continue for life or while the employee could render the required service or the employer furnish the employment, the contract will be construed to be for an indefinite period and terminable at will by either party. Faulkner v. Des Moines Drug Co., 117 Iowa 120, 90 N.W. 585; Rape v. Mobile & Ohio R. Co., 136 Miss. 38, 100 So. 585, 35 A.L.R. 1422, annotation page 1432; Arentz v. Morse Dry Dock & Repair Co., supra, 249 N.Y. 439, 164 N.E. 342, 62 A.L.R. 231, annotation page 234; Littell v. Evening Star Newspaper Co., supra, 73 App.D.C. 409, 120 F.2d 36, 37. The contract, which the plaintiff testified that he entered into with the defendant, by its terms provided that the employment was to be for the term of plaintiff's life, provided he continued to render the service contemplated. If the contract existed, it was clearly not terminable at will.

The troublesome question in this case is whether there was any competent evidence that the defendant entered into the contract of employment, as the plaintiff asserts that it did. The trial court was of the opinion that the alleged contract was of such an unusual nature that, in order to make a prima facie case, the plaintiff was required to show that the contract was executed by officers of the defendant pursuant to express authority conferred upon them by the defendant's Board of Directors. It seems to us that the trial court placed too great a burden upon the plaintiff.

---

[2] "If it is their purpose, the parties may enter into a contract for permanent employment—not terminable except pursuant to its express terms—by stating clearly their intention to do so, even though no other consideration than services to be performed is expected by the employer or promised by the employee." Page 37 of 120 F.2d.

■■ It is true that there was no evidence that McCann, as the employment manager at the Mason City plant of the defendant, had express authority to obligate the defendant to employ the plaintiff for life. There was evidence that he did not have such authority. The rule is that a general manager of a business with authority to employ is not presumed to have authority to make contracts for lifetime employment. F. S. Royster Guano Co. v. Hall, 4 Cir., 68 F.2d 533, 536; Reupke v. D. H. Stuhr & Son Grain Co., 126 Iowa 632, 102 N.W. 509; Ney v. Eastern Iowa Telephone Co., 162 Iowa 525, 144 N.W. 383; General Paint Corp. v. Kramer, 10 Cir., 57 F.2d 698; Rennie v. Mutual Life Ins. Co., 1 Cir., 176 F. 202. This rule, however, is not applied to cases where the contract for life employment is made in consideration of a settlement of a claim for damages for personal injuries. F. S. Royster Guano Co. v. Hall, supra, 4 Cir., 68 F.2d 533, 536, and cases cited; 35 Am. Jur. 461, § 25.

■ It is to be noted that the plaintiff's evidence does not show that McCann executed the contract for the defendant. The testimony is that the contract appeared to have been executed by a vice-president and a secretary of the defendant and that it was delivered by McCann to the plaintiff to be signed by him. There is no reason why the existence of a contract, like any other fact, may not be proved by circumstantial evidence. The circumstances, disclosed by the plaintiff's evidence, which indicate that it is probable that he has the contract with the defendant upon which his claim is based are: That he had been in defendant's employ for ten years before he was disabled; that his disability was incurred in the course of his employment; that it incapacitated him from doing heavy manual labor; that McCann, who was the employment manager of defendant at Mason City and who had dealt with the plaintiff respecting employment and in regard to compensation for his injuries, had stated that the defendant felt obligated to the plaintiff and wished to get him back to work; that McCann, when he delivered the contract to the plaintiff, stated that it had been executed by the defendant and required only the signature of the plaintiff to become effective; that the contract appeared upon its face to be properly executed; that its substance was as represented by McCann; that the plaintiff signed the contract after securing the advice of his attorney, and delivered the contract to McCann, who accepted it; that the plaintiff then returned to work and was given the sort of work referred to in the contract; that he remained in the employ of the defendant for two years after he signed the contract; that during that period he heard two different superintendents of the plant state, in connection with the performance of their duties, that plaintiff had life or permanent employment; that plaintiff was at no time prior to his discharge advised that the contract was not as represented by McCann.

There can be little doubt that if the plaintiff, in addition to the circumstances disclosed by his evidence, had shown that the contract was made in connection with a settlement of a claim for compensation or damages, he would have made out a prima facie case. See F. S. Royster Guano Co. v. Hall, supra, 4 Cir., 68 F.2d 533, 535, 536 and cases cited. But the nature of the consideration for such a contract, as pointed out in Littell v. Evening Star Newspaper Co., supra, 73 App.D.C. 409, 120 F.2d 36, 37, is merely a circumstance to be considered with all other circumstances in determining whether the parties' minds met with respect to the permanency of the employment.

■ There is, no doubt, a radical distinction between a contract for permanent employment of a stranger or an able-bodied former employee, where the consideration is merely a promise to render service, and a contract for permanent employment of an employee who has been injured and disabled in the employer's service and who releases a claim for personal injuries in consideration of being furnished a continuing means of livelihood. It seems to us, however, that there is no great distinction between the case of an employee who is given a life employment contract in settlement of his claim for injuries, and the case of an employee like the plaintiff, whose contract for life employment was not made in connection with the settlement of such a claim but was made because he, after many years of service for his employer, had suffered a disability, in the line of duty, which incapacitated him from performing his former duties but left him able to perform light work which the employer could furnish. In the former case the employer, by making the contract, satisfies a legal claim for damages, while in the latter case he satisfies a moral claim to afford a means of livelihood to an employee incapacitated in the service of the employer after many years of employment. If, in the

former case, an employee might reasonably rely upon the apparent authority of the local agents or officers of such a corporate employer as Armour and Company to offer him a life contract of employment, we think that in the latter case an employee like the plaintiff could, with equal reasonableness, rely upon the apparent authority of such local agents and officers. See F. S. Royster Guano Co. v. Hall, supra, 4 Cir., 68 F.2d 533; Littell v. Evening Star Newspaper Co., supra, 73 App.D.C. 409, 120 F.2d 36.

■■ There was nothing unnatural or unreasonable about the plaintiff's reliance upon the apparent authority of McCann, as employment manager of the defendant, to deliver to plaintiff the alleged contract of life employment or to advise him as to its nature and the effect of his acceptance of it. The plaintiff did what a man of his station in life might reasonably be expected to do to satisfy himself as to the nature and validity of the agreement proposed. McCann was the man who acted for the defendant in its dealings with the plaintiff. There is no basis in the evidence for believing that the contract was not what McCann said it was and what it purported to be, or that it was not executed with authority. It is true, however, that it was not shown that the contract was executed on behalf of the defendant by officers who were expressly authorized to execute it. It would not have imposed any undue or unjust burden upon the defendant to have required it to put in its evidence and to explain why the agreement, which the plaintiff was led by the defendant's local officers to believe that he had and which his evidence tended to indicate that he had, did not exist, was invalid or ineffective, or was properly terminated. Whether there would have been, at the close of all the evidence in the case, any question of fact for determination by the jury, it is, of course, impossible to determine. We go no further than to say that, in our opinion, the defendant's motion for a directed verdict, made at the close of the plaintiff's evidence, should have been denied, and the court below should have admitted all of the plaintiff's evidence relative to the circumstances surrounding the making of the alleged contract and relative to the recognition of its existence by defendant's officers in charge of the plant at Mason City.

It seems probable that the result of the trial was in part due to the failure of the plaintiff to adequately investigate and prepare his case for trial. He did not know whether the contract upon which his claim was based was a written or an oral contract, and he had alleged that it was both. While it was shown that he had retained no draft of the written contract which his testimony established that he had signed and delivered to McCann, there was no evidence that such contract was no longer in existence or that the plaintiff could not have ascertained its whereabouts and have compelled its production. It is conceivable that a thorough investigation leading to a clearer understanding of the facts which gave rise to this controversy might facilitate a proper determination of it.

The judgment appealed from is reversed, and the case is remanded with directions to grant a new trial.