91 N.Y.2d 685 (1998)
697 N.E.2d 571
674 N.Y.S.2d 616
Kevin Rooney, Plaintiff,
v.
Michael G. Tyson, Defendant.
Court of Appeals of the State of New York.
Argued May 5, 1998
Decided June 4, 1998.
Michael J. Coyle, New York City, for plaintiff.
Paul, Hastings, Janofsky & Walker, L. L. P., New York City (Lawrence I. Weinstein, Charles B. Ortner and Kevin J. Perra of counsel), for defendant.
Proskauer Rose, L. L. P., New York City (Stephen Rackow Kaye, Gregory S. McCurdy and Brian M. Cooper of counsel), for Barney's, Inc., amicus curiae.
Judges LEVINE, CIPARICK and WESLEY concur with Judge BELLACOSA; Judge SMITH dissents and answers the certified question by stating that the purported contractual language indicates employment of indefinite duration which merely raises a rebuttable presumption under the at-will rule, in a separate opinion; Chief Judge KAYE and Judge TITONE taking no part.
*687 BELLACOSA, J.
A precise issue in this Federal case is certified to this Court by the United States Court of Appeals for the Second Circuit. We are asked to provide an authoritative statement on the threshold question of whether an oral personal services contract between a fight trainer and a boxer to last "for as long as the boxer fights professionally" provides a definite legally cognizable duration. Conversely, the problem can be framed as whether this temporal description constitutes an employment for an indefinite period, within the strictures of New York's at-will employment doctrine.
The Federal lawsuit is for an alleged breach of an oral agreement essentially between plaintiff, Kevin Rooney, and defendant, Michael Gerard Tyson. Rooney was to receive 10% of Tyson's boxing earnings as compensation for his personal training services. The case was tried in the Federal District Court for the Northern District of New York; a jury rendered a $4,415,651 verdict for Rooney. The Trial Judge granted Tyson's posttrial motion for judgment as a matter of law; the verdict was set aside and the lawsuit dismissed. Rooney appealed to the Second Circuit Court of Appeals. It certified the question to this Court in order to decide its appeal in accordance with *688 governing New York substantive law. We narrowly answer the core question as posed, that this durational clause satisfies New York's standard with sufficient definitiveness.

I.
The undisputed facts are taken from the trial evidence and the certified statement. In 1980, at 14 years of age, Tyson was placed under the supervision of Cus D'Amato, a renowned boxing figure and manager. When Tyson's mother died in 1983, D'Amato also became his legal guardian. At the beginning of the young man's boxing career, Rooney and D'Amato agreed that Rooney would train Tyson without compensation until the fighter became a professional athlete. The two further agreed that when Tyson advanced to professional ranks, Rooney would be Tyson's trainer "for as long as [Tyson] fought professionally."
Rooney trained Tyson for 28 months without compensation. In March 1985, Tyson turned professional and began enjoying meteoric success. D'Amato died that same year. James Jacobs became Tyson's manager in 1986. When rumors started in some sports media that Rooney would be replaced as Tyson's trainer, Rooney queried Jacobs. To quell the speculation, Tyson allegedly authorized Jacobs to state publicly that "Kevin Rooney will be Mike Tyson's trainer as long as Mike Tyson is a professional fighter." Jacobs sent Rooney a copy of a press release to that effect. Thereafter, Rooney continued to train Tyson and was compensated for each of Tyson's professional fights until 1988.
In 1988, apparently in connection with Rooney's alleged comments regarding Tyson's divorce and other business-related litigation, Rooney allegedly read a newspaper article stating that Tyson would no longer train with Rooney. Tyson formally terminated his boxer-trainer relationship with Rooney later that year. The Federal lawsuit, claiming breach of the 1982 oral agreement, was begun in 1989.
The jury in Federal court in Albany returned its verdict in favor of Rooney in 1996. Tyson countered after the trial that the agreement was for an indefinite duration and was terminable at will under New York law and therefore unenforceable as a matter of law, regardless of the jury's verdict. The District Trial Court agreed with Tyson's legal position and granted him the posttrial victory. The Trial Judge reasoned that "under New York law, terms such as `permanent employment', `until retirement' or `long term' do not state a definite term of employment *689 as a matter of law" (956 F Supp 213, 216). The court concluded that "the alleged term of the employment contract, `for as long as Tyson boxes professionally,' does not state a term of definite duration as a matter of law" (id., at 216). It finally declared that "the nature of the proof offered at trial cannot sustain a finding that the employment relationship was anything other than one at-will" (id., at 216).
On Rooney's appeal, the Second Circuit Court of Appeals certified the question to this Court (127 F.3d 295, 298) pursuant to this State's Constitution and this Court's Rules of Practice (NY Const, art VI, § 3 [b] [9]; 22 NYCRR 500.17). The focus and role of this Court are confined by the precise and narrow question certified under the collaborative juridical arrangement. No plenary adjudicative authority is authorized or contemplated because the matter is not a case or controversy, as such, in the State court system.

II.
In New York, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party" (Matter of De Petris v Union Settlement Assn., 86 N.Y.2d 406, 410 [emphasis added]; see, Matter of Hanchard v Facilities Dev. Corp., 85 N.Y.2d 638, 641; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 300). The at-will presumption may be triggered when an employment agreement fails to state a "definite period of employment," "fix[] employment of a definite duration," "establish[] a fixed duration" or is otherwise "indefinite" (compare, Ingle v Glamore Motor Sales, 73 N.Y.2d 183, 186, 188; Sabetay v Sterling Drug, 69 N.Y.2d 329, 333; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 300, 305, supra; Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 460, 465-466; Martin v New York Life Ins. Co., 148 N.Y. 117).
A sensible path to declare New York law starts with these two steps: (1) if the duration is definite, the at-will doctrine is inapplicable, on the other hand, (2) if the employment term is indefinite or undefined, the rebuttable at-will presumption is operative and other factors come into the equation (see, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 466, supra; see also, Martin v New York Life Ins. Co., 148 N.Y. 117, 121, supra; Ingle v Glamore Motor Sales, 73 N.Y.2d 183, 186, supra).
Initial consideration of the at-will presumption, as the threshold pivot to answer the certified question, bypasses the logical prerequisite and precedential preference to search out *690 and resolve the definiteness aspect first (see, Sabetay v Sterling Drug, 69 N.Y.2d 329, 333, supra; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 301, supra). That is a major difference of approach between the majority and the dissent.
Our ample previous precedents have not categorically delineated what may differentiate a "definite," "indefinite," or "fixed" employment term or duration utilized in various contractual formulations. That ellipsis prompted the certification to us from our Federal court counterpart with respect to this case and appeal in its court. The guidance we advisorily tender should be dispositive of the precise law query as transmitted to us (see, 22 NYCRR 500.17 [a]; Retail Software Servs. v Lashlee, 71 N.Y.2d 788, 790; Karger, Powers of the New York Court of Appeals § 65, at 393-394 [3d ed]). Everything else  including especially the relevant application and actual decision of the case  is, of course, within the exclusive juridical competence of the Second Circuit Court of Appeals.
Notably, this Court has consistently reaffirmed the threshold determination that a definite employment duration does not implicate the at-will employment presumption (see, Matter of De Petris v Union Settlement Assn., 86 N.Y.2d 406, 410, supra; Wieder v Skala, 80 N.Y.2d 628, 633; Ingle v Glamore Motor Sales, 73 N.Y.2d 183, 186, supra; Sabetay v Sterling Drug, 69 N.Y.2d 329, 333, supra; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 300, supra; Parker v Borock, 5 N.Y.2d 156, 159; Arentz v Morse Dry Dock & Repair Co., 249 N.Y. 439, 443-444; Martin v New York Life Ins. Co., 148 N.Y. 117, 121, supra). This is not simply a chicken-or-egg-which-comes-first puzzle; it is the sensible, analytical progression.
When an agreement is silent as to duration, however, it is presumptively at-will, absent an express or implied limitation on an employer's otherwise unfettered ability to discharge an employee (see, Sabetay v Sterling Drug, 69 N.Y.2d 329, 336, supra; O'Connor v Eastman Kodak Co., 65 N.Y.2d 724, 725; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 305, supra; Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 465-466, supra). Only when we discern no term of some definiteness or no express limitation does the analysis switch over to the rebuttable presumption line of cases. They embody the principle that an employment relationship is terminable upon even the whim of either the employer or the employee. The agreement in this case is not silent and manifestly provides a sufficiently limiting framework.
*691 This Court, for example, found indefinite such temporally amorphous terms as "permanent" (Arentz v Morse Dry Dock & Repair Co., 249 N.Y. 439, 443-444, supra), to "continue indefinitely and will follow [the employee] in each succeeding year" (Gressing v Musical Instrument Sales Co., 222 N.Y. 215, 218), to "devote [the employee's] whole time and attention" to the employer's business (Watson v Gugino, 204 N.Y. 535, 537), and yearly employment for a specified annual salary (Martin v New York Life Ins. Co., 148 N.Y. 117, 119-121, supra). Moreover, we have distinguished employment "for life or a definite period" from those varying terms (Arentz v Morse Dry Dock & Repair Co., 249 N.Y. 439, 444, supra; see, 1 Corbin, Contracts § 4.2, at 560-561 [rev ed 1993]). None of the unenforceable porous phrasings is delimited by legally and realistically cognizable boundaries, as are found in this case.
For context, moreover, this Court adopted the at-will presumption doctrine in Martin v New York Life Ins. Co. (148 N.Y. 117, supra; see, Watson v Gugino, 204 N.Y. 535, 541, supra; Gressing v Musical Instrument Sales Co., 222 N.Y. 215, 218-221, supra; see also, Feliu, Primer on Individual Employee Rights, at 3). There, a general hiring was found to result from an employment agreement that was "yearly" or "by the year" (Martin v New York Life Ins. Co., supra, 148 NY, at 119-120). Because those terms were deemed too indefinite, the at-will rubric took precedence. In reinforcing the still prevailing at-will doctrine, this Court stated:
"`In England it is held that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring by the year * * * With us, the rule is inflexible, that a general or indefinite hiring is prima facie a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, but only at the rate fixed for whatever time the party may serve. * * * A contract to pay one $2,500 a year for services is not a contract for a year, but a contract to pay at the rate of $2,500 a year for services actually rendered, and is determinable at will by either party. * * * [I]n all such cases the contract may be put an end to by either party at any time, unless the time is *692 fixed'" (id., at 121, quoting Wood, Master and Servant § 136 [2d ed 1886] [emphasis added]).
Distinctions crop up even in cases where a limitation exists on an employer's right to discharge an otherwise at-will employee (see, Murphy v American Home Prods. Corp., 58 N.Y.2d 293, supra; see also, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 460, supra; Sabetay v Sterling Drug, 69 N.Y.2d 329, supra). Though an employment contract is of indefinite duration, an express or implied limitation on an employer's right to discharge may still become operative (see, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 465, 467, supra). Most pertinently, this Court has emphasized also that "`if the employer made a promise, either express or implied, not only to pay for the service but also that the employment should continue for a period of time that is either definite or capable of being determined, that employment is not terminable * * * "at will" after the employee has begun or rendered some of the requested service or has given any other consideration'" (id., at 465, quoting 1A Corbin, Contracts § 152, at 14 [emphasis added]).
New York's jurisprudence is supple and realistic, and surely not so rigid as to require that a definite duration can be found only in a determinable calendar date. Thus, although the exact end-date of Tyson's professional boxing career was not precisely calculable, the boundaries of beginning and end of the employment period are sufficiently ascertainable. That is enough to defeat a matter-of-law decision by a Judge, in substitution for resolution at the Federal trial by jury verdict. Under the employment agreement, the durational term was understandable to the parties and reasonably determinable by the fact finders. Moreover, Rooney's compensation under the contract  for the legal consideration he bound himself to and rendered for years without payment prior to Tyson "turning pro"  was expressly linked to a percentage of Tyson's earnings within the professional career measuring rod (see, 1A Corbin, Contracts § 152, at 14 [1963]).
The range of the employment relationship, concededly created and actualized for several years in the framework of this Federal dispute, is established by the definable commencement and conclusion of Tyson's professional boxing career. Though the times are not precisely predictable and calculable to dates certain, they are legally and experientially limited and ascertainable by objective benchmarks. That is what makes this case distinctive within the myriad of arrangements people may undertake.
*693 It is imperative, too, that we emphasize that the aspect of New York's jurisprudence that we propound today in no way alters the force and effectiveness of general long-standing principles relating to commercial agreements, otherwise governed by common-law or statutory standards (compare, North Shore Bottling Co. v Schmidt & Sons, 22 N.Y.2d 171, 175; Cammack v Slattery & Bro., 241 N.Y. 39, 44-45; Ehrenworth v Stuhmer & Co., 229 N.Y. 210; Jugla v Trouttet, 120 N.Y. 21, 28-29; with Sabetay v Sterling Drug, 69 N.Y.2d 329, 335, supra; Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 304-305, supra; Haines v City of New York, 41 N.Y.2d 769, 772-773; see also, UCC 2-309 [2]). The dissent ironically faults the majority repeatedly for such things as "heralds" some "new era" in "oral promises of potentially long-term employment" (see, dissenting opn, at 694). Nothing could be further from the fact. The oral nature of this agreement, unassailably made, is not even in issue since that was conceded out of the case by the parties. Only the definiteness is controverted.
Moreover, we deem it necessary to comment briefly also on the extent of the dissent in relation to the precisely posed certified question. The phrasing in the Second Circuit Court of Appeals' request is instructive: "in certifying a question of the validity of the particular contractual relationship before us, we are not asking the New York Court of Appeals to interpret a contract or to decide a case * * * but rather to elucidate a series of open and recurring questions of New York law" (127 F.3d 295, 297, supra). The preliminary and dispositive question, as we are bound to and have also emphasized, turns on definiteness.
That Court's question is whether the contract between this fight trainer and this professional boxer to train the boxer "for as long as the boxer fights professionally" may support a definite duration finding. This Court's response by our majority expression not only answers the question but also adheres to the realistic plenitude of New York's jurisprudence in this area of the law, and we are well aware of the personal and commercial consequences of the myriad types of arrangements made between parties to these transactions. We are also mindful of the scale of this Court's role, in constitutionally participating with the Federal court in its exclusive jurisdictional application and adjudication of substantive principles of New York State law is formally and appropriately limited (see, NY Const, art VI, § 3 [b] [9]; 22 NYCRR 500.17; see also, Karger, Powers of the New York Court of Appeals § 65, at 393-396 *694 [3d ed]). The majority's authoritative response is measured out in proportion to these operative principles and strictures, and with a full appreciation of our heralded common-law interstitial developmental process. We do not at all abandon the tradition that has wisely guided the careful progression of the at-will doctrine and its application in particular circumstances (Cardozo, Nature of the Judicial Process, in Selected Writings of Benjamin Nathan Cardozo, at 115, 134 [Margaret E. Hall ed 1947] [observing that Judges proceed "`interstitially'" "`from molar to molecular motions'"], quoting Southern Pac. Co. v Jensen, 244 US 205, 221 [Holmes, J., dissenting]).
The dissent, on the other hand, strongly disagrees with and variously over-characterizes the import and reach of the majority rationale (see, dissenting opn, at 694, 698-699, 704-706). The dissent uses a different and broader approach of its own, not unlike that of the Federal District Court (see, dissenting opn, at 696, 699-705, 706). To be sure, those two differing views reach a conclusion that the agreement is indefinite, but that postulate cannot trigger a dispositional at-will analysis, when this majority, qua Court, determines, as we do, in the threshold step of analysis that the agreement measures up as sufficiently definite. We need not, nor may we, venture in dictum or additional discussion, and we need respond to the Second Circuit and to the dissent no further.
Accordingly, the certified question of the Second Circuit Court of Appeals should be answered that an oral contract between a fight trainer and a professional boxer to train the boxer "for as long as the boxer fights professionally" is a contract for a definite duration.
SMITH, J. (dissenting).
By its ruling, the majority heralds a new era in interpreting oral promises of potentially long-term employment. Because I believe the majority's conclusion is contrary to precedent, policy and practice, I dissent.
The following facts from the certification by the United States Court of Appeals for the Second Circuit provide a contextual backdrop for the ensuing legal analysis. Plaintiff Kevin Rooney claims that, pursuant to an oral contract in 1982 between himself and Cus D'Amato, legal guardian and manager of defendant Michael Gerard Tyson, then a minor, he was to train Tyson until Tyson turned professional, whereupon he would be Tyson's trainer "for as long as [Tyson] fought" and would be paid 10% of Tyson's boxing earnings. After he turned professional, *695 Tyson initially enjoyed increasing success as a boxer and Rooney was compensated in accordance with the earlier arrangement. However, the personal relationship between the men later soured and on December 9, 1988, Rooney learned that Tyson would no longer train with him.
Rooney then brought the present action against Tyson, claiming a breach of the 1982 employment contract allegedly made by D'Amato. Prior to trial, the court denied Tyson's motion for summary judgment finding, inter alia, that there were factual issues relating to whether the employment relationship was terminable at will, and whether the contract was unenforceable as one of a close personal nature or because Tyson was a minor at the time it was made.
A jury found in Rooney's favor and awarded him damages of $4.4 million. However, the United States District Court for the Northern District of New York vacated the jury award and granted defendant Tyson judgment as a matter of law. The court ruled that "the alleged term of the employment contract, `for as long as Tyson boxes professionally,' does not state a term of definite duration as a matter of law" (Rooney v Tyson, 956 F Supp 213, 216). The court further held that "the nature of the proof offered at trial cannot sustain a finding that the employment relationship was anything other than one at-will" (id., at 216). Rooney appealed the court's decision to the United States Court of Appeals for the Second Circuit.
On appeal, the Second Circuit certified the following question to this Court: "Does an oral contract between a fight trainer and a professional boxer to train the boxer `for as long as the boxer fights professionally' establish a definite duration, or does it constitute employment for indefinite duration within the scope of the at-will rule?" (Rooney v Tyson, 127 F.3d 295, 298.)
Although the question certified merely asks this Court to determine whether the stated language establishes a definite or indefinite duration, the answer carries significantly varied implications. If the duration of the employment is deemed to be definite, the employment relationship is defined by the contract and is examined under traditional contract principles. On the other hand, if the purported contractual language indicates an indefinite duration, the employment relationship is presumptively at-will, and terminable at any time. In the latter case, the parties could still be bound by the term of employment, though indefinite, if the plaintiff had sufficient *696 proof of consideration apart from a mere promise to work. Since the record is not before us, resolution of the latter issue is not required. However, the legal analysis relating thereto is an important consideration in examining the consequences of our answer to the core issue presented.
The majority concludes that the stated contractual language establishes an employment term for a definite duration. However, upon a straightforward application of our precedents in this area, I conclude that the submitted language indicates employment for an indefinite duration.

I

Definite vs Indefinite
Although we have had few occasions to explore the contours of the issue presented, our precedents indicate that a hiring for an "indefinite" duration includes one that may have some definable ending point, but the actual length of employment is not fixed with precision. For example, in Arentz v Morse Dry Dock & Repair Co. (249 N.Y. 439) plaintiff sought to prove "that he was employed for life or at least for as long a time as the defendant remained in business" (id., at 440) based upon an oral promise of "permanent employment." We characterized the promise as "nothing more than that the employment [was] to continue indefinitely" (Arentz v Morse Dry Dock & Repair Co., 249 NY, at 444; see also, Revere v Boston Copper Co., 32 Mass 351, 361 ["a contract (for life) with a corporation, which is in its nature perpetual, but determinable by some contingent event, is a contract for an indefinite time"]). Similarly, an employment contract which provides that an employee may only be terminated for "just cause" represents a hiring for an indefinite duration (see, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458).[1]
*697 Such circumstances may be contrasted with an employment relationship where its duration "`is either definite or capable of being determined'" (see, Weiner v McGraw-Hill, Inc., 57 N.Y.2d 458, 465, supra [citation omitted]). In every example addressed by this Court, a "definite" duration was only determinable by reference to a precise calendar date. For example, in Gressing v Musical Instrument Sales Co. (222 N.Y. 215) and Cuppy v Stollwerck Bros. (216 N.Y. 591), the documentary evidence indicated that the parties had contracted for one year of definite employment. In the Gressing case, defendant had guaranteed a certain amount of business annually. In Cuppy, the employer's letters offered employment for 12 months and a certain rate per year (see also, Carter v Bradlee, 245 App Div 49, affd 269 N.Y. 664 [contract which provided for two-year commitment with provisions to renew on the same terms could not be terminated after the third year of employment]).
It would also appear that parties might specify that employment is to continue indefinitely until the happening of a particular event. However, it is only when the event precisely defines the length of employment that it will be considered of "definite" duration. Thus, a fixed duration may be precisely measured when employment lasts through summer (from the June solstice to the September equinox) or until the next election (first Tuesday in November) but not by the level of a company's stock, a lifetime or subjective performance evaluations. Indeed, the requirement that the length of the employment relationship be fixed and definite at the time of contracting effectively balances the rights of employees and employers since both will know exactly how long the employment relationship will last. It is only when the length of employment is actually and precisely ascertainable at the time of contracting, removing uncertainty for all, that we have found the duration to be "definite."
The question is not whether the event that may terminate employment is "fixed" but whether the duration of the relationship is precisely measured by that event. Indeed, as stated long ago in a case decided by the Supreme Judicial Court of Massachusetts:
"The engagement of the plaintiff to perform services, being for the time for which the corporation was established, * * * is for an indefinite time, *698 determinable by the dissolution of the corporation in a mode fixed by law" (Revere v Boston Copper Co., 32 Mass 351, 361, supra).
A period of time measured by an individual employer's continued professional career is indistinguishable from a corporate employer remaining in business. Similarly, career-long employment is akin to a "`permanent' position" allegedly measured by an employee's lifetime which we have held is employment of an indefinite duration (see, Arentz v Morse Dry Dock & Repair Co., 249 N.Y. 439, 442, supra).
The majority reasons that contracts for a "permanent" position establish an indefinite duration because they are not "delimited by legally and realistically cognizable boundaries" (majority opn, at 691). The majority inevitably concludes that the ending of a professional boxing career is somehow more definite than death. Rather, both contracts, so delimited, indistinguishably define a fixed boundary, but for employment of indefinite duration. The distinction seen by the majority is elusive, to say the least. Indeed, it is difficult to glean the majority's basis for finding the boundary defining the duration at issue as more "definite" than contracts that are "yearly" or "by the year" (majority opn, at 691).
The majority concludes that a period which might last any length could still be characterized as "definite" and "fixed." Though the condition which might terminate the employment relationship is defined, the time in which the relationship might endure is obviously far from "definite." By focusing on the definiteness of how employment might be limited rather than the definiteness of the term of employment, the majority reshapes precedent to hold that a stated event which could terminate an employment relationship, but which might occur at any time, may also definitively fix the duration of employment as a matter of law.
The most troubling aspect of the majority's ruling is its consequences. The doctrine of at-will employment has served as the judicial bedrock of New York employment law since 1896. By creating a subcategory of employment relationships where the duration has "some definiteness" (majority opn, at 690), the majority chips away at the precedential foundation that this Court has consistently applied. As exposed below, the shift taken by the majority in concluding that the submitted language creates employment for a definite term may have *699 substantial ramifications upon employment law as a practical matter.[2]

II

The Consequences of the Majority's Ruling on Employment Law
For over a century, this Court has strictly and steadfastly adhered to the approach that a general hiring or employment for an indefinite period, where no specific time is fixed for the duration of the employment, is presumptively "at-will" (see, e.g., Murphy v American Home Prods. Corp., 58 N.Y.2d 293, 301; Sabetay v Sterling Drug, 69 N.Y.2d 329, 333; see also, Arledge v Stratmar Sys., 948 F.2d 845, 848 ["the resoluteness with which the New York Court of Appeals has reaffirmed the `at will' rule indicates that exceptions to the rule are discouraged"]). The majority's ruling that the stated language defines an employment contract of definite duration avoids the at-will presumption and eliminates important elements of proof that we have always required under substantially similar facts.
Underpinnings of At-Will Employment
In Martin v New York Life Ins. Co. (148 N.Y. 117), this Court examined the nature of a "general hiring" (id., at 120) which, by definition, said "nothing * * * as to its duration" (2 Story, Contracts § 1290 [5th ed 1874]; see also, Watson v Gugino, 204 N.Y. 535, 540 [a general contract of hiring has no time specified]; Schouler, Domestic Relations § 458 [4th ed 1889] [engagement "without mentioning the time nor the frequency of payment * * * is a general hiring"]). In that case, we adopted a rule of interpretation and proof for claimed employment relationships:
"`With us, the rule is inflexible, that a general or indefinite hiring is prima facie a hiring at will; and if the servant seeks to make it out a yearly hiring, the burden is upon him to establish it by proof. A hiring at so much a day, week, month or year, no time being specified, is an indefinite hiring, and no presumption attaches that it was for a day even, *700 but only at the rate fixed for whatever time the party may serve. * * * [I]n all such cases the contract may be put an end to by either party at any time, unless the time is fixed, and a recovery had, at the rate fixed for the services actually rendered'" (148 NY, at 121, quoting Wood, Master and Servant § 136 [2d ed 1886]).
Previous courts were divided as to how such contracts should be interpreted. Some authorities had construed general hirings to endure for a year in accordance with the approach taken by the English courts (see, 1 Blackstone; Commentaries, at 425 [1765]) unless the frequency of payments was stated (see, 2 Story, Contracts, § 1291 [5th ed 1874] ["Where wages are payable at a stipulated period, as per week, or month, or half-year, such circumstance, standing alone, indicates that the hiring is for such period"]; Schouler, Domestic Relations § 458 [4th ed 1889] ["if a contract for hiring is at so much per month, it will readily be presumed that the hiring was by the month, even if nothing was said about the term of service"]). In one treatise, it was stated that the English rule of a one-year presumption applied to a general hiring but a "hiring for an indefinite time is only at will" (2 Story, Contracts § 1290 [5th ed 1874]). Both types of employment were presumptively at-will under the rule espoused by commentator Horace G. Wood (see, Wood, Master and Servant § 136 [2d ed 1886]). In New York, the latter "rule was deliberately adopted, all the judges concurring, to settle the differences of opinion which had prevailed in the lower courts" (Watson v Gugino, 204 N.Y. 535, 541-542, supra).
We have noted that the "original purposes of the employment at-will doctrine were to afford employees the freedom to contract to suit their needs and to allow employers to exercise their best judgment with regard to employment matters" (Sabetay v Sterling Drug, 69 N.Y.2d 329, 333, supra). In fact, the core of the at-will doctrine is the "unfettered" right held by the parties to terminate the employment relationship at any time for any reason not otherwise prohibited by law or public policy (see, Sabetay v Sterling Drug, 69 NY2d, at 337). General or indefinite terms of employment are not even presumed to endure "for a reasonable time" (Haines v City of New York, 41 N.Y.2d 769, 772).[3]
In accordance with the above-noted rule, any presumption of an at-will relationship may be rebutted with proof that the *701 unfettered right to terminate the employment "has been limited by express agreement" (Sabetay v Sterling Drug, supra, 69 NY2d, at 334; see also, O'Connor v Eastman Kodak Co., 65 N.Y.2d 724; Matter of Hanchard v Facilities Dev. Corp., 85 N.Y.2d 638; Parker v Borock, 5 N.Y.2d 156). However, as detailed below, the "burden of establishing the existence of these contractual limitations is heavy" (1 Proskauer, Rose, Goetz and Mendelsohn, New York Employment Law § 2.04 [2] [a]). Particularly relevant here is the principle that the elements and burden of proof required to overcome the at-will presumption are substantially different from that required to succeed in a claim based upon a contract for a definite duration.
Overcoming the At-Will Presumption
Since employment contracts with a definite duration are not presumptively at-will, traditional rules of contract interpretation apply. Typically, a court will not inquire into the adequacy of consideration supporting the parties' agreement since even the "`slightest consideration is sufficient to support the most onerous obligation'" (Mencher v Weiss, 306 N.Y. 1, 8; see also, Weiner v McGraw-Hill, Inc., supra, 57 NY2d, at 464; 1 Proskauer, Rose, Goetz and Mendelsohn, New York Employment Law § 2.03 [2] ["New York courts have rarely refused to uphold an employment contract for lack of consideration"]; Bakaly and Grossman, Modern Law of Employment Contracts § 3.2 [2d ed] ["adequacy of consideration is rarely an issue in employment contracts"]). Accordingly, an employee's mere promise to work could potentially support a promise of work for a definite term of years.
*702 However, a promise of employment which might last anywhere from a day to a decade is insufficient, standing alone, to indicate an actual intention to be potentially and absolutely bound to obligations far in excess of an ordinary employment at-will relationship. While "`the manifestation of a party's intention rather than the actual or real intention is ordinarily controlling'" (Mencher v Weiss, supra, 306 NY, at 7 [citation omitted]), promises of employment of indefinite duration  such as that measured by the physical or professional life of either party  are simply too unusual to be taken at face value. Such assumptions are of greying vintage (Heaman v Rowell Co., 261 N.Y. 229, 231 ["Alleged contracts of life employment are * * * so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized"]).
In Arentz v Morse Dry Dock & Repair Co. (249 N.Y. 439, supra), we noted that, "[s]tanding alone and by themselves," the words "permanent employment" do not guarantee a job for life when used in contracts between employers and employees (id., at 444). We distinguished the matter from cases where such intent was demonstrated "from the circumstances * * * and from the consideration which has been furnished" (id., at 444). As an example, we cited Rague v New York Evening Journal Publ. Co. (164 App Div 126), a case in which the Court held in favor of a plaintiff who sued to enforce an oral agreement under which defendant promised to pay him for "as long as he abstained" from selling a rival newspaper (id., at 126). The Court expressly observed that the contract "was not without consideration, as the plaintiff abandoned a valuable business" (id., at 126).
Another case we cited approvingly was Pierce v Tennessee Coal, Iron & R. R. Co. (173 US 1), where the plaintiff had been employed as a machinist in the defendant's coal mine when he was seriously hurt under conditions which plaintiff claimed rendered defendant liable to him in damages. The contract at issue required plaintiff to receive certain wages and benefits "so long as his disability to do full work continued; and that, in consideration of these promises of the defendant, the plaintiff agreed to do such work as he could, and to release the defendant from all liability upon his claim for damages for his personal injuries" (id., at 9). At trial, plaintiff proved that he was permanently disabled by his injuries; that he was always ready and willing to do such work for defendant as he was able; and that defendant, without reasonable ground therefor, discontinued payments to plaintiff and disregarded the *703 contract. Where such facts were "proved to the satisfaction of the jury," the Supreme Court held that defendant "committed an absolute breach of the contract, at a time when the plaintiff was entitled to require performance" (id., at 16). Clearly, more was involved in that case than the mere allegation that wages were promised "so long as" plaintiff was disabled, an indefinite period.
As one court has stated the rule:
"Under circumstances where an employee has given consideration of benefit to the employer, additional to the services of employment, a contract for permanent employment is valid and enforceable and not against public policy and continues to operate as long as the employer remains in business and has work for the employee, and the employee is willing and able to do his work satisfactorily and does not give cause for his discharge" (Forrer v Sears, Roebuck & Co., 36 Wis 2d 388, 394, 153 NW2d 587, 590).
In a later case, this Court explicitly held that "a contract for employment for life * * * based on an adequate consideration, will ordinarily be sustained" (Heaman v Rowell Co., 261 N.Y. 229, 231, supra) and other "as long as"-type employment relationships recognized by this Court as binding have all involved continuing performance and consideration given by the employee independent of a mere promise to work for the employer (see, e.g., Cammack v Slattery & Bro., 241 N.Y. 39, 42 [employer held to promise to continue paying royalties for indefinite period when it continued to sell radiators "which embodied ideas and conformed to plans developed by the plaintiff"]; Ehrenworth v Stuhmer & Co., 229 N.Y. 210, 215 [agreement to sell defendant's bread "as long as" the parties were in business was supported by consideration given on both sides]; Schwarz v Regensburg & Sons, 227 N.Y. 568 [payments for life upheld upon promise not to compete with defendants in business]; cf., Rubin v Dairymen's League Co-op. Assn., 284 N.Y. 32, 38 [Court upheld lower court's finding of fact that "agreement was `unilateral as to time and could be terminated by either party at any time'"]).
More recently, in Weiner v McGraw-Hill, Inc. (57 N.Y.2d 458, supra), we concluded that a jury question had been raised as to whether plaintiff was entitled to employment indefinitely in light of a claimed promise by defendant "not to discharge [him] *704 without just and sufficient cause and an opportunity for rehabilitation" (id., at 466). In that case, we concluded that plaintiff had alleged, inter alia, sufficient facts to support the conclusion that he had detrimentally relied upon defendant's assurance that he would not be discharged without cause. We have characterized such factors to be "significant" in a claim of breach of an employment contract for an indefinite duration (Sabetay v Sterling Drug, supra, 69 NY2d, at 334) and the absence of such pleading and proof may be fatal to such a claim (see, e.g., O'Connor v Eastman Kodak Co., 65 N.Y.2d 724, supra; Matter of De Petris v Union Settlement Assn., 86 N.Y.2d 406).
Although each of these cases raised different issues relating to pleading and proof based upon the facts presented, it is clear that an employee must show consideration independent of a mere promise to work for an employer to overcome the presumption of at-will employment. In this case, though analogous to those requiring such additional proof, the majority finds that the employment is for a definite duration as a matter of law and, thus, a traditional contract analysis would apply. Thus, the majority's ruling relieves plaintiff from having to prove elements we have recognized as necessary for recovery upon similar facts.
No one claims that Tyson must train under Rooney despite the strain in their personal relationship. In contemplation of such circumstances, it may well be that Tyson and/or his guardian never intended that Rooney be paid even in the absence of an ongoing, actual training relationship. It is also possible that sufficient proof exists in the record to sustain the plaintiff's claim regarding the parties' intention. However, that question and that proof are not before us. While the District Court concluded that "the nature of the proof offered at trial cannot sustain a finding that the employment relationship was anything other than one at-will" (Rooney v Tyson, 956 F Supp 213, 216, supra), no opinion is expressed here on the issue which must be resolved in the Federal courts.
For this case, the Second Circuit has asked this Court to determine whether an oral promise that employment will endure "as long as" defendant's professional boxing career, standing alone, establishes an employment agreement of definite duration, which effectively reduces to an irrelevancy the requirement of additional circumstances and/or consideration that would be required to rebut an at-will presumption. Rather than analyze this case in accordance with our precedents in which the present circumstances neatly fit, the majority carves *705 out a category of employment contracts from the at-will rebuttable presumption.[4]
Consideration of the Statute of Frauds
The majority's reliance upon oral promises of job security is also troubling in light of other concerns we have articulated in this area. An employment contract of a definite duration beyond a year may avoid application of the at-will presumption but must be in writing to be enforceable at all (see, General Obligations Law § 5-701 [a] [1]). Though, in some circumstances, oral contracts may bind parties as tightly as those that are written, it is clear that a writing subscribed by the party to be charged with long-term obligations is the most reliable indicator of actual intent (see, Burns v McCormick, 233 N.Y. 230, 234 [Cardozo, J.] ["The peril of perjury and error is latent in the spoken promise"]). Indeed, in Arentz v Morse Dry Dock & Repair Co. (249 N.Y. 439, supra), we opined that "[a]n agreement to employ the plaintiff * * * for life is so unusual that we would expect to find it contained in some writing" (id., at 441).[5] Here, the potentially long-term obligations recognized by the majority as a matter of law would not be barred by the Statute of Frauds because Tyson concedes that his professional career might have ended within a year. Thus, the majority's decision manages to sidestep the level of proof we have recognized as necessary under both the at-will presumption and the Statute of Frauds.
Of course, such concerns do not inform the previously reached conclusion herein that the contractual language at issue is for employment of indefinite duration, the sole issue submitted for our determination by the Second Circuit. Contrary to the majority's characterization of the dissent, the "oral nature" of the contract at issue is not the basis of the difference in conclusions reached on definiteness.
Conclusion
The ultimate question is not whether the agreement is void for indefiniteness but whether the parties intended to be bound *706 to the claimed obligations. We have conclusively held that "permanent" or "lifetime" employment is of indefinite duration  though fixed by a particular event  but may yet be enforced when such intent is indicated by the giving of consideration. "Permanent" employment logically and readily encompasses circumstances in which either party ends its professional life through death, retirement, bankruptcy or any other means. The majority recasts precedent to hold that an event, which could happen at anytime for any reason, may also precisely fix the length of an employment relationship.
The majority declines to address the broader impact of its ruling upon employment law. However, it has been noted that "[t]here can be no wisdom in the choice of a path unless we know where it will lead" (Cardozo, The Nature of the Judicial Process, in Selected Writings of Benjamin Nathan Cardozo, at 102).
As discussed herein, certain contracts purporting to bind parties to career-long employment, or for some similarly indefinite term, have required a sufficient showing of consideration and/or other facts to overcome the presumption of at-will employment. Ironically, the majority supports its conclusion that the contract at issue is for a definite term by resorting to an analysis of the compensation and consideration rendered by the employee under the contract (see, majority opn, at 692). Whether the contract is for a definite duration does not depend on whether the employee rendered sufficient consideration in reliance upon the contract. Nor does the conclusion regarding the contract term require any reference to the employee's compensation as a percentage of the defendant's professional bouts. Such factual issues are more properly directed to the enforceability of the contract itself which must be examined by the Federal court. The conclusion reached herein that the contract is for an indefinite duration depends solely upon the language certified by the Second Circuit.
For the foregoing reasons, I would answer the certified question in the following manner: The purported contractual language indicates employment of indefinite duration which merely raises a rebuttable presumption under the at-will rule. I express no opinion about whether the presumption has been rebutted by plaintiff's evidentiary showing or whether any other grounds exist that might support a motion against the jury's verdict.
Following certification of a question by the United States Court of Appeals for the Second Circuit and acceptance of the question by this Court pursuant to section 500.17 of the Rules of the Court of Appeals (22 NYCRR 500.17), and after hearing argument by counsel for the parties and consideration of the briefs and the record submitted, certified question answered as follows: An oral contract between a fight trainer and a professional boxer to train the boxer "for as long as the boxer fights professionally" is a contract for a definite duration.
NOTES
[1] Federal authorities dealing with employment contracts are in accord with this approach (see, Wanamaker v Columbian Rope Co., 907 F Supp 522, 538-539 [oral assurance of a permanent career position is indefinite employment], affd 108 F.3d 462 [2d Cir 1997]; Wright v Cayan, 817 F.2d 999, 1003 [2d Cir 1987] [promise of a "permanent appointment" is employment of indefinite duration]; Hunnewell v Manufacturers Hanover Trust Co., 628 F Supp 759, 762 ["the phrases `full working life' and `through normal retirement age', do not explicitly state a definite term during which plaintiff could expect to remain employed"]; Weiler v National Multiple Sclerosis Socy., 1980 WL 104, 4 [US Dist Ct, SD NY] ["the very phrase, `until he chose to retire,' is indicative of the indefinite time period of the contract"]; Peters v MCI Telecommunications Corp., 685 F Supp 411 [employer's promise that employee "`could expect long-term employment'" failed to state definite duration]).
[2] The majority indicates that the dissent takes as its "threshold pivot" an "[i]nitial consideration of the at-will presumption" to answer the question certified (majority opn, at 689). This statement ignores the conclusion reached herein on the issue of "definiteness" prior to any mention of the at-will presumption.
[3] In interpreting New York law, Federal courts have applied a somewhat different analysis when the "employees" are corporations (see, Don King Prods. v Douglas, 742 F Supp 741; Warner-Lambert Pharm. Co. v John J. Reynolds, Inc., 178 F Supp 655, affd 280 F.2d 197; Payroll Express Corp. v Aetna Cas. & Sur. Co., 659 F.2d 285). In those cases, the courts held that the corporate parties should be bound by the explicit termination provisions of the written service contracts they had freely executed. However, we have noted that "compelling policy reasons" may require a different analysis in employment contracts (see, Haines v City of New York, 41 N.Y.2d 769, 772-773, distinguishing at-will employment cases such as Watson v Gugino, 204 N.Y. 535, supra). Indeed, in Haines, we relied upon authorities such as Benham v World Airways (432 F.2d 359), a case in which the Ninth Circuit explicitly noted that "the employment aspect of the contract presented different questions of duration and damage ascertainment from those involved in the joint venturing phase" (id., at 362). In Haines, the agreement did not state how long it was to endure. We implied duration for a "reasonable time" which we concluded was until one party "no longer needed or desired" the service provided by the other  an inference not to be drawn from an indefinite employment relationship (41 NY2d, at 773).
[4] Although the Second Circuit asked this Court to answer whether the submitted language "establishes" a definite duration, the majority holds that the language "may support a definite duration finding" (majority opn, at 693). The majority further states that "the durational term was * * * reasonably determinable by the fact finders" (majority opn, at 692).
[5] We have noted that the "Statute of Frauds was originally rooted in the prevention of `fraud in the proving of certain legal transactions particularly susceptible to deception, mistake and perjury' * * * but not `"to afford persons a means of evading just obligations"'" (Cron v Hargro Fabrics, 91 N.Y.2d 362, 370 [citations omitted]).